## BLACK ET UX. v. BEAGLE ET AL.

(No. 2247; July 13, 1943; 139 Pac. (2d) 439)

270

For the appellant, there was a brief and oral argument by *Harry C. Green,* of Denver, Colorado, and *Carleton A. Lathrop,* of Cheyenne.

272

For the respondents, there was a brief by *A. R. Mc-Micken* and *Eph. U. Johnson,* of Rawlins, and oral argument by *A. R. McMicken.*

BLUME, Justice.

This is an action to quiet title to the Southwest Quarter of the Southeast Quarter of Section Twenty-eight, in Township Forty-one North of Range One-Hundred-Sixteen West of the Sixth P. M. The action was brought by Thomas Ray Black and wife against Charles W. Beagle and others. The court entered a decree quieting the title in the plaintiffs and from that decree Charles W. Beagle alone has appealed. The record shows substantially the following facts:

On July 1, 1926 one Zettie Beagle, wife of Charles W. Beagle, appellant herein, was the owner of the land above described. On that day she leased the premises

to James DeLoney and J. R. Crisp for the period of three years expiring on the first day of July, 1929 at a rental of $75. for the first year, $100. for the second year, and $125. for the third year. The lease contained the following provision: "Whereas, the said parties of the second part desire to build and erect cabins and other buildings and needed equipment on said premises for the purpose of operating a camping ground and conveniences for campers using the same, now, it is expressly stipulated and agreed, between the parties hereto, on or before the termination of the life of this lease the said second parties (lessees) may purchase said described premises for the sum of Fifteen Hundred Dollars, ($1500.00), cash payment; or in the event said parties of the second part do not so elect to purchase said premises, they may remove all improvements, as aforesaid, forthwith; provided, the said party of the first part reserves the right to purchase the same, on the termination of this lease, at the actual appraised valuation, then, of said improvements." Zettie Beagle died on January 26, 1928. James DeLoney testified among other things as follows:

"Q. Prior to the termination of this lease, what did you do?

"A. We filed a notice with Mr. Beagle that we intended to buy at the terms that the lease called for.

"Q. What did you do to carry that out?

"A. We notified Mr. Beagle that we were ready to take up our option.

"Q. And then what occurred?

"A. They told us that they would put it into the hands of the court * * * and it would be fixed right up for us. * * * We placed the money in the hands of the First National Bank at Laramie, a cashier's check for $1,500, which the lease called for, and it was placed there waiting for Mr. Beagle to fix up the deeds, and as soon as the deed would be fixed up the money would be turned over to him."

The appellant herein denied the foregoing testimony.

He was appointed administrator of the estate of Zettie Beagle on May 10, 1930 by the District Court of Albany County where the deceased was a resident at the time of her death. According to the testimony of Mr. De-Loney he was again notified that the option would be exercised. The property of the estate of Zettie Beagle was appraised by appraisers appointed by the court in Albany County. The appellant testified that he objected to the exercise of the option under the lease for the reason that the option had expired. According to the testimony of Mr. DeLoney he made no objection whatever to the exercise of the option. In any event, on August 30, 1930 an application was filed in the District Court of Albany County, signed by C. M. Eby, Attorney for the administrator, reciting the fact that the lessees above mentioned were given the privilege of purchasing the above described premises for $1500; that notice of the exercise of the option had been served upon the administrator after his appointment as such; that the deceased left two children who have agreed that the property may be conveyed to the lessees above mentioned; that the administrator is ready and willing and desires to execute a deed conveying the land to the lessees. The court accordingly was asked to authorize the administrator to do so. Attached to the petition was a consent executed by Phoebe B. Reese and Calvin H. Beagle who together with Charles W. Beagle were the only heirs at law of Zettie Beagle. The consent reads, among other things, as follows: "We further consent and request that the Court execute an order authorizing the administrator of said estate to enter into, make and execute a deed in and to said described real estate, as per and according to the Lease and Option to Purchase the same, heretofore duly signed by Zettie Beagle, during her life time." On September 6, 1930 the court entered an order pursuant to the application above mentioned authorizing and directing the

administrator of said estate to execute a deed to the above described lands to the above mentioned lessees. This was done pursuant to the provisions of sections 88-3301 to 3308 of the Rev. St. 1931, section 88-3301 reading as follows: "When a person who is bound by contract in writing to convey any real estate, dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance, the court or judge may make an order authorizing and directing his executor or administrator to convey such real estate to the person entitled thereto." The name of J. R. Crisp was misspelled in this decree, but upon application the correction was made by the court on October 4, 1930. On September 11, 1930 the appellant as administrator of the estate of Zettie Beagle executed a deed conveying the above mentioned land to J. R. Crisp and James DeLoney, the deed reciting that the deceased in her life time was bound by a contract in writing to convey the lands to the grantees in the deed; that she died and that the deed is made pursuant to a decree of the court authorizing the execution of the conveyance. The appellant, as administrator, on April 7, 1931 made his final report to the court of his doings as administrator. This report also recites the option above mentioned, that an application had been filed authorizing him to perform the terms of the lease agreement, that an order authorizing him to convey the land to the lessees had been entered by the court, and that a deed had been executed accordingly. By decree of the court of April 24, 1931, the property of the estate was distributed to the appellant and his two children, Calvin H. Beagle and Phoebe Beagle Reese. The $1500 paid for the property in controversy was included in the amount distributed. No part of it was ever offered to be returned.

It appears that J. R. Crisp died prior to the execution of the deed above mentioned, and his heirs and

James DeLoney, on October 2, 1930, conveyed the property above described to Thomas R. Black and Alfred G. Morton, for $5000, who thereupon immediately took possession and have been in possession since that time. The record shows that Alfred G. Morton, one of the grantees in the above mentioned deed, gave a mortgage to Helen M. Black dated March 15, 1931 for $1000 conveying to her the undivided one-half interest in and to the property above mentioned. This mortgage was duly filed of record. On August 31, 1931, Alfred G. Morton and his wife conveyed to Thomas R. Black and Helen M. Black all of their undivided interest in and to the property. On May 24, 1935, Thomas R. Black and his wife conveyed 64/100 of an acre of land to one Dewey Bakes and the same grantors, on November 15, 1930, leased part of the property to the Texaco Company and they also gave a right-of-way deed through the land to a telephone company. On March 17, 1936, Thomas R. Black and Helen M. Black mortgaged for $6000 the above described premises to the Jackson State Bank, excepting the 64/100 acre conveyed to Dewey Bakes. During all of this time, commencing with 1931, the premises were assessed for taxes in the name of Black and Morton or Thomas R. Black and they paid the taxes assessed against the premises up to the time of the trial of this case, and, furthermore, erected on the premises about 32 cabins costing more than $20,000. Appellant admitted that he had not paid any attention to the property since the time of his conveyance thereof.

The action herein was instituted on December 31, 1940 and the plaintiffs rely for their title not alone upon the fact that a conveyance of the lands was made by the appellant herein as above mentioned, but also that they have been in adverse possession of the premises for more than ten years. The appellant in his answer admitted that plaintiffs have had possession of

the premises for the period of more than ten years, but pleaded that they held the premises as tenants in common with the appellant and not adversely to him. Calvin H. Beagle and Phoebe B. Reese appeared in the action, filed a demurrer to the petition which was overruled and they thereupon defaulted, but during the pendency of this action, namely on May 19, 1941, they conveyed all their interests, if any they had, to the appellant, Charles W. Beagle.

I. The appellant herein has argued twenty-two different points in contending that the trial court erred in rendering a decree in favor of the respondents, Black. We cannot take up these various points separately. Some of them are immaterial in so far as the appellant is concerned. That, for instance, is true in regard to the appointment of an attorney for some of the defendants in the case, other than the appellant herein or his children. That is true also in regard to the settlement of the estate of John R. Crisp. We shall attempt to note the main points upon which reliance has been placed by counsel for the appellant.

II. It is contended that the option given to DeLoney and Crisp in the lease made by Zettie Beagle was not exercised during the time of the lease. The evidence on that point is conflicting as shown by the recital of the testimony in that respect, and we could not, accordingly, disturb the judgment of the trial court on that point. It might, however, be mentioned further that the contention of the appellant in this connection is inconsistent. He insists, on the one hand, that he is a cotenant of the plaintiffs. That is to say, he concedes that the deed executed by him as administrator of the estate of Zettie Beagle is valid in so far as the conveyance to James DeLoney is concerned. He concedes, in other words, that he properly conveyed the one-half interest in the premises to James DeLoney. That deed

is based upon the fact that the option in the lease was properly exercised. If it was exercised properly in part, it was exercised properly as to all, and it is apparent that there is no merit in the contention here made.

III. Appellant further contends that the purchase price of $1500 was inadequate and he points to the fact that Black and Morton paid the sum of $5000 when they obtained a conveyance from DeLoney and the Crisp heirs. In the first place, while the record is not clear on the point, it may be that part of the difference in the price may be accounted for by the fact that DeLoney and Crisp placed some improvements on the premises during the term of the leasehold which they had from Zettie Beagle. The lease contemplated that they would put some cabins on the premises and that they would have the right to remove these cabins and improvements placed on the land in case they should not exercise the option of purchase. The improvements on the premises at the time when the lease by Zettie Beagle was given had apparently been burned down and the record shows that when the deed to Black and Morton was made, there were at least five buildings on the premises, the value of which, however, is not shown. Furthermore, the fact that DeLoney and the Crisp heirs may have made a good bargain with Morton and Black does not necessarily show any inadequacy of price so far as the appellant is concerned. Zettie Beagle was apparently satisfied to convey the land for the sum of $1500. She made that contract and if the option was properly exercised, as held by the court and as shown by the action of the appellant and his children, no reason existed why anything more than the $1500 should have been paid to the estate of Zettie Beagle or her heirs. It may be mentioned in this connection that the property was appraised in Albany County and the contention is made that the appraisers in the county

knew nothing of the value of the land in Teton County and were not competent to act as appraisers in that connection. This could at most be regarded as an irregularity. The appellant was the administrator of the estate and he was responsible for the appointment of appraisers in Albany County and he could not well take advantage of an irregularity in that respect. Furthermore, the only interest which, under the circumstances, the heirs of Zettie Beagle had in and to the land was under the contract namely to be paid the sum of $1500. The right to the payment of this sum was personal property, which followed the residence of the deceased, and in this view of the facts, we could not say that the appraisement was wrongly made in Albany County.

IV. C. M. Eby acted as the attorney for the appellant while he was administrator of the estate of Zettie Beagle. Eby notarized the deed given by appellant to Crisp and DeLoney as well as some reports made by the appellant to the court in the estate of Zettie Beagle. Counsel for the appellant have argued at great length that it was improper for the attorney of the administrator to notarize any papers executed by him. But, that at most was an irregularity. Ramsay Motor Company vs. Wilson, 47 Wyo. 54; 30 Pac. (2d) 482. Moreover, we are unable to see how the appellant is in position to take advantage of such an irregularity to which he himself was a party. Creditors of the estate and other parties interested, aside from the appellant, might have made an objection to this course of conduct, but no such objection was made. So far as the deed is concerned, it is held that only creditors and subsequent purchasers may raise such objection. 1 C. J. S. 797; 1 C. J. 771. The contention made in this connection must accordingly be overruled.

V. The main contention made herein is the fact that John R. Crisp was dead at the time when the deed to

him and to James DeLoney was executed; that a deed to a dead man is void; and that, accordingly, only one-half interest in the premises was conveyed by the deed made by appellant, leaving the remaining one-half interest in him and his co-heirs. It appears to be the general rule that a deed to a person or corporation not in esse is void, (16 Am. Jur. 478) but, the rule applies only as to the legal estate. It is stated in 26 C. J. S. 185 as follows: "However, a deed will not be declared void, on behalf of the grantor who retains the full consideration, on the sole ground that the grantee who paid the consideration died before execution of the deed; nor does the rule that a conveyance without a grantee capable of receiving the grant is void apply to equitable rights growing out of such a conveyance." In the White Oak Grove Benevolent Society vs. Murray, 145 Mo. 622, it was contended that a deed to a corporation not in esse was void and the court stated: "The defendant invokes the well settled common law doctrine that at law there can be no such thing as a conveyance without a person, either natural or artificial, capable of receiving a grant; a doctrine fully recognized by the adjudications of this court. * * * But, it has long been established in this State that these decisions refer entirely to the transfer of the legal estate and do not touch the equitable rights of the parties growing out of the transaction. * * * Having received the consideration, the grantor is in no position to question the corporate capacity of the company. * * *" A like contention, as in the Missouri case, was made in Harwood vs. Masquelette et al., 95 Ind. App. 338; 181 N. E. 380. The court stated in part: "This contention is in accord with the almost universally accepted rule that a deed to an immediate estate in land, made to a person not in being or a corporation not yet organized or having valid existence is a nullity and passes no title to any one. * * * But, these decisions refer to the transfer of

the legal title and it is our opinion that they do not affect the equitable rights of the parties growing out of the transaction." In the case of Thompson vs. Lumber Company, 168 N. C. 226; 84 S. E. 289, it appears that a deed had been executed to a man who was dead. The court stated: "The deed to Prichard which was objected to, is void, as contended by the defendant, because the grantee named was dead at the time of its execution, * * * but upon proof of payment of the purchase price bid at the sale an equitable estate would be vested in the heirs of the purchaser, and it is well settled in this State that an action may be maintained on an equitable title." In the case of Fidelity Securities Company vs. Martin, 117 Wash. 323; 201 Pac. 301, it also appears that a deed was executed to a man who was dead. The court stated: "The intervening death of Zilinsky in no manner affected the legality of the transaction. It was the intention of the grantors to convey the fee. It was the intention of Martin that the title should pass to Zilinsky in accordance with the terms of the contract entered into between himself and Zilinsky. Justice demands that it be so treated and equity, under a familiar maxim, will treat the conveyances as conveyances to Zilinsky's estate."

It appears from the foregoing authorities that, while the legal title attempted to be conveyed by the appellant was void, the equitable title vested in the Crisp heirs, and the contention, accordingly, that one-half interest in the land was never conveyed is not well taken. The fact that the appellant conveyed the premises in his capacity as administrator of the estate of Zettie Beagle would make no difference. He is estopped in his personal capacity as to what is done in his representative capacity. Welles vs. Stackelberg, 52 Neb. 597; 72 N. W. 865; 66 Am. St. Rep. 529; Poor vs. Robinson, 10 Mass. 131.

VI.  Appellant concedes that the plaintiffs have been in possession of the premises in controversy herein for the period of over ten years prior to the commencement of this action, but that no true adverse possession was held against him by reason of the fact that he was a cotenant of the plaintiffs resulting from the fact that the deed to Crisp was void.  We have already seen that the basis for this contention is not valid.  We may add, moreover, that it is not true that no title by adverse possession can ever be acquired by one who is cotenant. It is apparent from the record before us that appellant paid no attention whatever to the premises after he conveyed it to Crisp and DeLoney.  He never paid any taxes on it or apparently knew anything about the property after his conveyance was made.  During that period of time, the Blacks and Morton did acts which would only be consistent with the fact that they claimed exclusive possession and title of and to the premises. They erected improvements on the premises of the value of more than $20,000 which, of course, they would never have done if they had thought that the appellant herein, or anyone else, excepting themselves, had the whole and complete and exclusive title to the property, and to now hold that the appellant has a half interest in and to the premises, made valuable by such a great amount of improvement, would be to perpetrate a great wrong upon the present possessors.  It is stated in 1 Am. Jur. 825: "Although the exclusive taking of the profits by one tenant in common for a long period of time with the knowledge of the other cotenant and without any claim of right by him may raise a natural presumption of ouster upon which the jury may find the facts to exist if it satisfies their minds."  In 1 Am. Jur. 826 it is said that: "If one enters under color of title claiming the whole for himself and other neces-

sary conditions of adverse ownership concur, his possession will be adverse to his cotenant." In 1 Am. Jur. 827 it is stated that a cotenant will not be deemed to be ousted until he has actual notice of such ouster, but that such notice may arise from acts or circumstances attending the adverse possession which are overt, notorious, and unequivocal in their character and import. "From such acts it is the duty of the other cotenants to be informed thereof and to draw such reasonable inferences therefrom as prudent persons possessed of, and interested in, like information would naturally do, and such cotenants out of possession cannot prevent the operation of the Statute of Limitations by proving that they did not know of the facts affecting their interest or knowing of them did not draw correct conclusions therefrom." It would seem that, under the circumstances in this case, the appellant must be held to have had clear notice of the fact that Morton and Black exercised ownership of the property in the manner heretofore mentioned. Counsel for appellant seek to excuse the fact that appellant paid no attention whatever to the property for a period of ten years because he did not know that he had an interest in the property until 1937. We think, however, that the testimony in this case justified the court in finding the contrary. Appellant had lived in the same neighborhood with J. R. Crisp and he testified that he had a conversation with the son of J. R. Crisp who asked him during 1930 if he, appellant, would make a conveyance of the property in accordance with the option of the lease. In all probability, he knew of the death of J. R. Crisp at that time. Furthermore, he testified that he felt that he had an interest in the property soon after he made the conveyance as administrator, because of the fact that he felt that he had been defrauded. Despite that fact, he paid no attention to the property and we think that,

under the circumstances, he can hardly come into a court of equity with any hope of success.

After careful consideration of the evidence in this case, we think that the trial court was fully justified in entering judgment herein in favor of the plaintiff. It should accordingly be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.

ON PETITION FOR REHEARING

(August 17, 1943; 140 Pac. (2d) 594)

Petition denied.

BLUME, Justice.

A petition for rehearing has been filed in this case. Only one new point has been urged. Counsel for the defendant and appellant contend that in order that a plaintiff may maintain an action to quiet title or remove a cloud thereon he must have legal title to the property in question. They cite and quote in support of that contention 44 Am. Jur. 32. They have quoted only part of the text, which, so far as applicable here, reads as follows: "The general rule, subject to certain qualifications and exceptions noted herein, is that, in order to maintain an action to quiet title or remove a cloud thereon, the complainant must have legal title to the property in question, *or to some interest therein.*" Counsel, for some reason which we are unable to understand, failed to notice the clause italicized herein. There can hardly be any question that the plaintiffs and respondents herein had some interest in the property, the title to which they sought to quiet.

We had not previously noticed the provisions of section 10, chapter 46 of the Session Laws of Wyoming, 1935 which reads as follows:

"In all cases where a conveyance of real estate situate in this state has been made by an executor, administrator or administrator de bonis non, of any deceased person, whether appointed and acting in this or any other state, and the fact of the sale or the conveyance of such real estate has been reported to the court in which such executor, administrator or administrator de bonis non was appointed and acting, and the proceeds of such sale or conveyance, or any part thereof have been distributed, it shall be prima facie evidence that the person or persons so receiving said proceeds or any part thereof, either directly or through any agent or assignee, consented to such sale and conveyance, and intended thereby and did thereby, vest in the purchaser under such sale, and the grantee in such conveyance all the right, title and interest which said person or persons, so receiving said proceeds or any part thereof, had in and to the premises so sold and conveyed at the time of such receipt, and did by so receiving such proceeds or any part thereof, intend to be estopped from claiming any further right, title or interest in and to such real estate."

It appears in this case that the heirs of Zettie Beagle, including the defendant and appellant herein, received, through distribution, the proceeds of the sale of the property herein. According to the statute, they are prima facie estopped from claiming any further right, title, or interest in and to the real estate in question herein. We know of no evidence in this case which would overcome this prima facie case. It is clear, accordingly, that the petition for rehearing herein should be and is hereby denied.

*Rehearing denied.*

KIMBALL, Ch. J., and RINER, J., concur.