# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 50

APRIL TERM, A.D. 2017

May 10, 2017

JASON MICHAEL JOHNSON,

Appellant
(Respondent),

v.                                                          S-16-0177

BRETTENY MARIE CALKINS,

Appellee
(Petitioner).

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Father:*
    Timothy C. Cotton of Cotton Legal, Casper, Wyoming.

*Representing Appellee:*
    Richard H. Peek, Casper, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Jason Michael Johnson (Father) appeals the district court's order terminating his parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(i) and (iv) (LexisNexis 2015). He claims the evidence presented at trial was insufficient to establish grounds for termination under that statute by clear and convincing evidence.  He also claims that the district court should have required Bretteny Marie Calkins (Mother) to pursue remedies other than termination of parental rights.  We affirm.

## ISSUES

[¶2]     Father presents the following issues:

> 1. Whether the district court erred in terminating the parental rights of the non-custodial parent, [Father], under Wyoming Statute § 14-2-309(a)(i) because there was insufficient evidence of no contact and support; and the evidence established the custodial parent interfered with the non-custodial parent's attempts to communicate with the minor child.
>
> 2. Whether sufficient evidence was presented to support the Natrona County District Court's decision to terminate [Father's] parental rights under § 14-2-309(a)(iv) when the evidence established the non-custodial parent made successful and substantive efforts to become and be a fit and responsible parent.
>
> 3. Whether the district court erred by failing to consider whether less intrusive or restrictive methods of protecting the child were employed and exhausted before terminating [Father's] parental rights.

## FACTS

[¶3]     Father and Mother had a child in February 2006.  On March 11, 2015, Mother filed an action seeking to terminate Father's parental rights under § 14-2-309(a)(i) and (iv).  The district court appointed an attorney to represent Father, and held a bench trial on January 28, 2016 and March 29, 2016.  Father participated in the trial by telephone because he was incarcerated.

1

[¶4]    The parties lived together in Mother's home from 2005 to 2006. Father left the home in the fall of 2006, about six months after the parties' son, KSJ, was born.  Father saw his son approximately once a month over an unknown period after the parties separated in 2006.  This contact was not a typical visitation, and was not directed toward a relationship with KSJ.  Instead, Father asked Mother "can I come over" and did not spend time with KSJ.  Father would "eat or use the computer, shower, sometimes sleep . . . and then when he left, he would say bye and hug him."

[¶5]    After the parties separated, Mother obtained a child support order which required Father to pay $286.00 per month in child support.  Father made no child support payments until 2010, as indicated below.

[¶6]    Also after the parties separated, Father developed a relationship with Rose Rocco. In 2009, while Ms. Rocco was pregnant, Father struck her, breaking her jaw in two places.  He pled guilty to aggravated assault, and on January 5, 2010, was sentenced to a term of 18 to 48 months in the Wyoming State Penitentiary.

[¶7]    After Father went to the Penitentiary, the district court modified his child support order, reducing the child support obligation to $50.00 per month.  While in prison, Father made eleven child support payments ranging from $23.76 to $41.57.

[¶8]    Father was incarcerated on the aggravated assault charge from June 2009 to May 2011, first in the county jail and then in prison.  During that time he did not see or request any visits with KSJ.  He sent letters to Mother, but the focus of those letters was toward Mother, and only "vaguely" referenced KSJ.  There is no evidence that Father sent cards, letters, or any other communication to KSJ while he was incarcerated.

[¶9]    In May 2011, Father was transferred from prison to CAC (a halfway house) in Casper.  He remained there until December 15, 2011.  During his first three months at CAC, Father visited weekly with Mother and KSJ, for about an hour at a time.  As before, Father's focus was primarily on Mother during those visits.  Mother's testimony about the visits was that Father was more interested in talking with her than in visiting with KSJ.

[¶10]  Father worked for Applebee's while at CAC.  Applebee's withheld child support from Father's pay and submitted it directly to the state child support authority from August 2011 through January 6, 2012.  Shortly after Father was released from CAC, he was terminated from his job at Applebee's.  Father made no other child support payments until after this termination case went to trial.

[¶11]  After his release from CAC in late 2011, Father never visited or requested any contact or communication with KSJ.  Father did, however, have some contact with Mother on three occasions.  In February 2012, Father came to Mother's residence at

2

11:30 p.m. and said he needed a place to stay because his girlfriend had kicked him out. Although Father had completed a substance abuse program in prison, he now appeared to be under the influence of drugs, and had needle tracks on his arms. Mother refused Father's request for a place to stay. KSJ was sleeping during this event.

[¶12] In March 2012, Father broke into Mother's home and stole a laptop computer and about $40 from KSJ's piggy bank. Mother reported the crime, but it went unsolved until Father admitted the act while in federal prison in April 2014.

[¶13] In June 2012, Father followed Mother, who was with KSJ and some friends, to a park. He called Mother's name, and she responded that he should stay away. Father did not address KSJ or request any contact with him. Father made no other attempts to contact Mother or KSJ after leaving CAC, until the communications referenced below.

[¶14] On September 10, 2012, Father was charged with the federal crime of a felon in possession of a firearm. Those charges related to an incident occurring in July 2012. He was sentenced to the Florence Federal Correctional Institution, arriving there on March 3, 2013. His release from federal custody was scheduled for April 16, 2017.

[¶15] Father had a job while in the federal penitentiary. He earned $60.00 or $65.00 per month, although he sometimes earned less or was temporarily unable to work. The federal prison required Father to make a housing payment of $25.00 per quarter (3 months) from his prison income, and he also used his income to purchase personal items and make phone calls. His inmate account showed an average daily balance of $25.32 from January 1, 2015 through September 14, 2015. Father made no payments toward child support while in federal prison, until the single payment made near the end of trial, mentioned below.

[¶16] Father wrote a letter to Mother on April 7, 2014, from federal prison. In that letter he admitted that he committed the burglary at her residence in 2012, and attempted to rekindle a relationship with Mother. He stated "I'm not asking you to let me talk to (KSJ), I'm asking you to let me talk to you".

[¶17] Mother's email address was added to Father's federal prison inmate email account designating her as a recipient of email for KSJ. On December 26, 2014, Father sent Mother an email. The email was directed to Mother, not to KSJ, and sought to restore a relationship with Mother. Father expressed that, in addition to restarting a relationship with Mother, he wanted to be "close to" KSJ and that he loved and missed both Mother and KSJ. Mother did not respond to the email. Father claims that at some point Mother blocked him from sending emails to her email address, but Mother denies doing so.

[¶18] Mother filed her Petition seeking termination of Father's parental rights on March 11, 2015. On April 4, 2015, Father sent another email to Mother. In this email Father

3

asserted that KSJ had a close relationship with him. Father sent handwritten letters addressed to Mother on July 7, 2015 and August 10, 2015. Mother did not accept the letters, but instead had them returned to Father. Father sent "not very many" letters addressed to KSJ, all written after this case was filed, but Mother returned them to Father. Father did not send letters to KSJ from federal prison before Mother filed this case.

[¶19] As of December 28, 2015, Father had not paid any child support for over four years and was $8,120.39 in arrears. In March 2016, Father made a $25.00 payment toward child support from federal prison.

## STANDARD OF REVIEW

[¶20] Father challenges the sufficiency of the evidence to establish the statutory requirements for termination of his parental rights. "In a sufficiency of the evidence review, we give considerable deference to the district court's determination because it has the advantage of observing the demeanor of the witnesses." *AJJ v. State (In re KMJ)*, 2010 WY 142, ¶ 20, 242 P.3d 968, 972 (Wyo. 2010)

> We apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. *BA v. Laramie County Dep't of Family Servs.,* 2007 WY 128, ¶ 7, 163 P.3d 844, 847 (Wyo. 2007); *CDB v. DJE,* 2005 WY 102, ¶ 4, 118 P.3d 439, 440 (Wyo. 2005); *BSC v. Natrona County Dep't of Family Servs.,* 2004 WY 167, ¶ 11, 102 P.3d 890, 894 (Wyo. 2004). We examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party. *MN v. State, Dep't of Family Servs.,* 2003 WY 135, ¶ 5, 78 P.3d 232, 234 (Wyo. 2003). This Court then reviews the supporting evidence to ascertain if it clearly and convincingly satisfies the statutory elements required to support termination. *EBH v. Hot Springs Dep't of Family Servs.,* 2001 WY 100, ¶ 14, 33 P.3d 172, 178 (Wyo. 2001). Evidence is clear and convincing if it would persuade a trier of fact that the truth of the contention is highly probable. *LP v. Natrona County Dep't of Public Assistance and Social Servs.,* 679 P.2d 976, 982 (Wyo.1984). This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. *Street v. Street,* 2009 WY 85, ¶ 9, 211 P.3d 495, 498 (Wyo. 2009). In applying our standard of review, we keep in mind that the right to associate with one's family is fundamental and strictly scrutinize

4

petitions to terminate parental rights. *RLA v. State of Wyo., Dep't of Family Servs.*, 2009 WY 109, ¶ 13, 215 P.3d 266, 268 (Wyo. 2009).

*JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010). Father disagrees with some of the evidence presented by Mother and asserts that his own version of some facts is correct. For example, he asserts that Mother blocked his ability to send her emails and that he sent more letters from prison than were entered into evidence. Mother disputed those assertions. The standard of review requires us to rely on the evidence most favorable to Mother and discount conflicting evidence presented by Father.

[¶21] Father also contends that the district court should have required Mother to take some other approach, such as seeking child support enforcement or arranging supervised visitation, before seeking termination. This is an issue of whether the applicable statutes should be construed to require such steps before seeking termination of parental rights. Statutory interpretation raises a question of law, which we review *de novo*. *RAA v. AW*, 2016 WY 117, ¶ 11, 384 P.3d 1156, 1159 (Wyo. 2016).

## DISCUSSION

### *Sufficiency of the Evidence*

[¶22] The district court found that clear and convincing evidence established the statutory grounds for termination of Father's parental rights to KSJ under § 14-2-309 (a)(i) and (iv). That statute provides as follows:

> **§ 14–2–309. Grounds for termination of parent-child relationship; clear and convincing evidence.**
>
> (a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:
>
> (i) The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year. In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications. For purposes of this paragraph, a court order of custody shall not preclude a finding that a child has been left in the care of another person.
> . . . .

5

> (iv) The parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child.

[¶23] Although the district court found clear and convincing evidence to support termination under both subsections (a)(i) and (iv), it is unnecessary for us to consider each of them if the record supports the district court's findings on either basis for termination.

> The statutory bases for termination of parental rights are separate and independent. *MDW v. Hot Springs County Dep't of Family Servs. (In re SRJ),* 2009 WY 94, ¶ 10, 212 P.3d 611, 614 (Wyo. 2009). "Proof of any one of those [bases] by clear and convincing evidence supports the termination of parental rights." *Id; see also JD and SE v. Wyoming Dept. of Family Servs.,* 2009 WY 78, ¶ 12, 208 P.3d 1323, 1327 (Wyo. 2009). We may affirm if there is sufficient evidence to support termination under any of the grounds enumerated in Wyo. Stat. Ann. § 14–2–309.

*DMM v. State, Dep't of Family Servs. (In re ZMETS, ZCJS, ZPMS, and ZKMS)*, 2012 WY 68, ¶ 18, 276 P.3d 392, 397 (Wyo. 2012). In this case it is sufficient to consider only the evidence in the record relating to § 14-2-309(a)(i). That statute requires clear and convincing proof of three elements: (1) the child has been left in the care of another person for a period of at least one (1) year; (2) the absent parent made no provision for support of the child for at least that same year; and (3) the child was without communication from the absent parent for a period of at least one (1) year.

[¶24] Each of these statutory requirements is based on the existence of a condition "for a period of at least one (1) year." Wyo. Stat. Ann. § 14-2-311(a)(iv) (LexisNexis 2015) requires a petitioner seeking termination of parental rights to list the grounds upon which the petition is based. In this case, then, the petition had to allege that the child was left in the care of another person, and there was no provision for support and no communication from the absent parent for at least one year before the petition was filed. The relevant one year period is the year prior to March 2015, when Mother filed this case.

[¶25] We now look to the record to determine if each of the three requirements of § 14-2-309(a)(i) were established by clear and convincing evidence, keeping in mind the applicable standard of review. The evidence at trial indisputably indicated that Father left KSJ in the care of Mother for far more than one year before March 2015. The evidence establishes that KSJ was left in the care of Mother for nearly all of KSJ's life—nine years at the time the petition to terminate was filed. Some of those years occurred when Father

was incarcerated, and some occurred when he was not. The record certainly contains clear and convincing evidence that Father left KSJ in the care of another person for a period of at least one year.

[¶26] The evidence at trial also showed that Father made no provision for KSJ's support for more than a year before this case was filed. Before Mother filed this case in March 2015, Father had not paid any child support for over three years. His last payment was made through his employer, Applebee's, in early January 2012.

[¶27] Father attempts to excuse his non-payment by arguing that he did not understand how to make support payments from federal prison. He argues that "once he figured out how he could reasonably and feasibly provide support, (Father) sent a support payment from the federal prison in March 2016." Father offers no valid explanation of why he failed to pay any child support at all after leaving the halfway house in December 2011, until he was again incarcerated in July 2012. Although he arrived in federal prison in early March 2013, he claims he had not "figured out" how to make child support payments from prison for over three years, until after his termination case went to trial. During those three years, Father was earning a wage in prison, although small, and was regularly making financial transactions for his own benefit. The record contains clear and convincing evidence that for four years before Mother brought this case Father failed to make provision for KSJ's support.

[¶28] Father claims that Mother failed to establish by clear and convincing evidence that KSJ was without communication from Father for a period of at least one (1) year. He asserts that he wrote an email and letters to KSJ, and that Father attempted to contact KSJ but was thwarted by Mother.

[¶29] The evidence most favorable to Mother indicates that during the three years before Mother filed this case, the only events which could potentially be considered as communication or contact by Father toward KSJ occurred: (1) in February 2012 when Father came to Mother's residence at 11:30 p.m. under the influence of a controlled substance looking for a place to stay; (2) in June 2012 when Father followed Mother, KSJ and others to a park, and attempted to contact Mother; (3) on April 7, 2014, when Father wrote a letter to Mother; and (4) on December 26, 2014, when Father wrote an email to Mother. Each of these events is insufficient to constitute contact or communication from Father to his son as anticipated by § 14-2-309(a)(i).

[¶30] Section 14-2-309(a)(i) directs that the district court may disregard "incidental" contact and communication when determining whether this requirement for termination has been proven. "[T]he ordinary and obvious meaning of 'incidental' as used in the statute is a casual minor occurrence that is insignificant and of little consequence". *RAA*, ¶ 17, 384 P.3d at 1160, quoting *Matter of Adoption of McMullen*, 236 Kan. 348, 691 P.2d

7

17, 20 (1984). Contact or communication may be "incidental" whether it is intentional, or simply something that occurs by happenstance. *Id*.

[¶31] The potential contacts listed above were certainly incidental, if they were contacts with KSJ at all. None of those contacts were directed to KSJ, but rather were addressed specifically to Mother. Consistent with Father's prior communications, these contacts revolved around an effort to form some sort of a relationship with Mother. The first two events, in March and June 2012, were not directed toward KSJ at all, but were attempts to contact Mother. Two years later, in April 2014, Father wrote a letter addressed only to Mother. In that letter he confessed to burglarizing her house, and specifically indicated he was not requesting communication with KSJ. Then Father sent an email to Mother, not KSJ, in December 2014. The information in it concerned Father's future plans to move to Wisconsin and wondered about Mother's reaction. Although this email mentioned that Father loves his son, it was not a communication toward KSJ. Any contact with KSJ from this email was certainly incidental. These four events over nearly three years cannot, even with a stretch of the imagination, be appropriately characterized as contact or communication by Father toward KSJ.

[¶32] The evidence showed that Father sent an email to Mother in April 2015, and wrote two letters to Mother from the federal penitentiary, one in July 2015 and one in August 2015. He also sent "not very many" letters addressed to KSJ after Mother initiated this case. Father had not contacted or sent communication directly to KSJ for over four years. Then, after being served with notice that Mother was seeking to terminate his parental rights, Father sent some letters to KSJ which Mother returned, unopened. Communication, or attempted communication, occurring after an action to terminate parental rights is filed is not effective to defeat application of § 14-2-309(a)(i). If it were, a parent could fail to communicate with his or her child for years, as happened here, and then avoid responsibility for that extended period of non-communication by writing a letter. The statute requires clear and convincing evidence of no communication or contact with the child for a year or more before the action to terminate parental rights is filed. Attempted communication after the case is filed is irrelevant.

[¶33] Furthermore, the few attempts at communication by Father after March 2015, were "incidental" and the district court appropriately disregarded them. Although some of those attempts at communication with KSJ were intentional, when they are viewed in the context of years without any contact or communication whatsoever, they were insignificant and of little importance.

[¶34] The evidence, when viewed most favorably for Mother, shows that Father directed virtually no communication toward KSJ from the end of 2011 until after this case was filed in March, 2015.

[¶35] Father insists that Mother interfered with his efforts to contact his son. The record simply contains no persuasive evidence to support this assertion. There was no evidence of even a single specific time when Father requested visitation with KSJ and was denied. Although once Father followed and was rebuffed by Mother, that event was not a request to communicate or visit with KSJ. There was no tangible evidence of birthday cards, gifts, letters, or other communication that Father sent to KSJ but were returned. Although Father testified that he believed Mother had blocked his email access to KSJ, Mother testified otherwise. Father failed to present any support for this claim other than his unsupported opinion. To the contrary, the evidence shows that Father sent emails to Mother both before and after Mother filed this case.

[¶36] The record contains clear and convincing evidence supporting the district court's decision on § 14-2-309(a)(i). The evidence most favorable to Mother clearly and convincingly shows that Father left KSJ in the care of another without provision for his support and simply did not attempt to contact or communicate with his son for far more than one year before this case was filed.

### *Requirement of Other Efforts Before Termination*

[¶37] Father argues that the relevant statutes required Mother to "have pursued and exhausted less intrusive or restrictive method[s] of protecting the child and pursuing support before resorting to termination." He argues that this Court should reverse the district court's decision because "the mother could have sought, but did not seek, a custody or other order from the Court imposing restrictions and conditions on the exercise of visitation such as supervision, drug and alcohol testing for sobriety, etc."

[¶38] Father bases this argument on a concurring opinion issued in *RW v. State*, 766 P.2d, 555, 558 (Wyo. 1989). *RW* involved a termination of parental rights obtained by the State under § 14-2-309(a)(iv). *RW* is distinguishable from this case because here the State of Wyoming is not the petitioner for termination, and because the analysis above is based on § 14-2-309(a)(i), not on (a)(iv). Furthermore, the concurring opinion relied upon by Father is based on the requirements of § 14-2-309(a)(iii), not (a)(i) nor (a)(iv).

[¶39] In *RW,* the parents asserted that "the State had a burden to prove termination was the least intrusive means to accomplish the State's interest in protecting KW." *RW,* 766 P.2d at 556. This assertion was based on cases where termination of parental rights occurred under § 14-2-309(a)(iii). *Id*. That statute permits termination of parental rights when

> [t]he child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and

9

> it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent.

Obviously, § 14-2-309(a)(iii) requires the State to take certain actions in an effort to rehabilitate a family or protect a child before termination may occur on this basis.

[¶40] The primary opinion in *RW* recognized that § 14-2-309(a)(iv) contains no such language. It stated "That statute is clear on its face. We need not employ rules of statutory construction, for it is clear that the State has no burden to demonstrate the unavailability of means less intrusive than termination." *RW,* 766 P.2d at 557. The same statement applies here. Both subsections (a)(i) and (iv) of § 14-2-309 are clear on their faces. Neither requires a petitioner to pursue lesser options before seeking termination of parental rights.

[¶41] The concurring opinion in *RW* found some similarity between the requirements of § 14-2-309(a)(iii) that reasonable efforts be made to rehabilitate before termination and the requirement of (a)(iv) that clear and convincing evidence show a parent is "unfit." Nothing in the primary opinion in *RW* nor the concurring opinion found any such requirement in § 14-2-309(a)(i). As indicated above, clear and convincing evidence in this case supported termination of Father's parental rights under § 14-2-309(a)(i). This statute does not require that the petitioner pursue lesser options before seeking termination.

[¶42] This Court considered whether some other rehabilitative efforts are required before termination of parental rights may occur under subsections other than (a)(iii) in *SLJ v. Dep't of Family Servs. (In Re SJJ),* 2005 WY 3, ¶ 32, 104 P.3d 74, 83 (Wyo. 2005). The *SLJ* court unanimously rejected such an argument, holding that based on the plain language of the statute, other efforts are required before termination only under subsection (a)(iii). It held that the other subsections of § 14-2-309(a) do not require such rehabilitation efforts. *Id.* We reaffirm that holding.

[¶43] Father's argument that Mother should be required to take "lesser" steps before seeking termination of Father's parental rights is an effort to transfer Father's parental responsibilities to support and communicate with his child to Mother. Rather than fulfilling his parental responsibility to support and communicate during the four years prior to the termination action, Father asks us to excuse his failures by requiring Mother to somehow force Father to pay support or communicate. Section 14-2-309(a)(i) contains no such requirement. The legislature established the statutory requirements found in § 14-2-309(a)(i), and it is not appropriate for this Court to add to those requirements.

10

[¶44] The plain language in § 14-2-309(a)(i) does not require a petitioner to attempt other approaches to solving child support or non-contact issues before seeking termination of parental rights.

[¶45] Affirmed.