# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 46

APRIL TERM, A.D. 2025

April 23, 2025

IN THE MATTER OF THE TERMINATION
OF PARENTAL RIGHTS TO: JDV, a minor
child.

MICHAEL SESSION,

Appellant
(Respondent),

v.                                                                S-24-0228

MICHAEL NAY and MALLORY NAY,

Appellees
(Petitioners).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
Joshua John Merseal, Merseal Law, LLC, Laramie, Wyoming.

*Representing Appellee:*
Stacy L. Rostad, Rostad Law, LLC, Laramie, Wyoming.

*Guardian ad Litem:*
Natasha K. Martinez, Natasha K. Martinez, P.C., Rawlins, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]  Michael and Mallory Nay are the guardians of JDV.  They brought this action to terminate the parental rights of JDV's natural father, Michael Session, alleging that Mr. Session had left JDV in their care and had not provided for his support or communicated with him for over a year, save for several incidental visits.  The district court granted the Nays' petition and terminated Mr. Session's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(i) (2023).  Mr. Session appeals, and we affirm.

## ISSUES

[¶2]  Mr. Session presents two issues, which we restate as:

> 1.    Did the district court correctly rule that the doctrine of judicial estoppel did not prevent the Nays and the guardian ad litem from arguing it was in JDV's best interests to terminate Mr. Session's parental rights?
>
> 2.    Did the district court violate Mr. Session's substantive due process rights when it terminated his parental rights?

## FACTS

[¶3]  JDV was born in 2014.  Mr. Session is his natural father.  His mother passed away in 2015.  In 2019, JDV was taken into protective custody by the Department of Family Services and placed in foster care with the Nays.  In 2021, the Nays petitioned for guardianship of JDV, which the district court granted.  Though the guardianship was uncontested, and Mr. Session consented to the Nays becoming JDV's guardians, the district court explained that it intended to provide for visitation between Mr. Session and JDV:

> My biggest concern today in granting this guardianship is I want to make sure there are provisions for visitation in the guardianship.  The guardianship does put extra responsibilities on a guardian that wouldn't be on an adoptive parent.
>
> If you were an adoptive parent, Mr. and Mrs. Nay, you would get to make every decision.  With a guardianship, there comes additional responsibilities.  And one of those big ones is to make sure that the parental rights and the family ties are maintained.

1

[¶4]    The Nays recognized Mr. Session retained his parental rights under the guardianship and agreed it was important for them, as JDV's guardians, to continue to facilitate JDV's existing familial ties. Mr. Nay explained JDV had "experienced so much loss in his life" and the Nays did not want him to lose the relationship he had with Mr. Session. The district court's order appointing the Nays as guardians reflected this understanding, finding "[t]hat it [was] in the best interest of [JDV] to maintain familial relationships" and ordering the Nays to "facilitate visitation between [JDV] and Michael Session in a safe environment at a minimum of once a month."

[¶5]    In 2023, the Nays petitioned to terminate Mr. Session's parental rights to JDV. They alleged that termination of Mr. Session's parental rights was proper under Wyo. Stat. Ann. § 14-2-309(a)(i) because Mr. Session had left JDV in the Nays' care, had not provided for his support, and had only incidental contacts with JDV for over a year prior to their filing. The court appointed the same guardian ad litem (GAL) for JDV who had served as the GAL in the prior neglect and guardianship proceedings. The GAL's position as to whether Mr. Session's parental rights should be terminated generally aligned with that of the Nays.

[¶6]    The trial on the Nays' petition proceeded in two phases. During the first phase, the district court considered whether the Nays presented clear and convincing evidence of grounds for terminating Mr. Session's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(i). Mr. Session testified that he had cancelled scheduled visits with JDV "once or twice" for reasons such as medical appointments, but he generally felt the Nays were at fault for not communicating with him about setting up visits. He believed the guardianship agreement placed the obligation on the Nays to reach out to him, rather than requiring him to be the one to coordinate visitation. He testified that since the guardianship began, he had not provided any financial support to JDV, had not sent any birthday cards or presents to JDV (save for one Christmas gift), and had made some "arts and crafts" for JDV but had not given them to him at the time of the trial. Mr. Session explained that with the guardianship agreement in place, it was "[n]ot [his] job to" financially support JDV.[1]

[¶7]    Ms. Nay testified at length regarding the Nays' attempts to schedule visitation with Mr. Session. She explained that from January 2022 to the filing of the Nays' petition for termination of Mr. Session's parental rights in July 2023, Mr. Session exercised his monthly visitation with JDV three times.[2] Ms. Nay kept a log of her attempts to schedule visits and Mr. Session's responses. The log and her testimony reflected that Mr. Session missed visits for a variety of reasons, including declining an invitation for a visit several weeks in the future because his other children were sick, not wanting his other children to get sick at the swimming pool where a visit was supposed to take place, and confusion

---

[1] Mr. Session also testified that JDV received monthly social security payments following his mother's death and that Mr. Session was the one to receive these payments. He further explained that after the guardianship began, he did not take steps to redirect those funds to the Nays and in fact spent the money himself.

[2] These visits occurred in April 2022, September 2022, and April 2023.

2

about the visitation schedule.[3] Ms. Nay also testified that the Nays asked Mr. Session for his schedule multiple times, but he was mostly unresponsive to these requests, resulting in multiple lengthy lapses in communication between Mr. Session and the Nays. During two of these lapses in communication, Mr. Session had changed his phone number and had not updated his contact information with the Nays.

[¶8] Ms. Nay testified that during the visits that did occur, Mr. Session did not act as a parent toward JDV. She explained that while Mr. Session made some efforts toward a relationship with JDV prior to the Nays becoming JDV's guardians, his efforts had ceased since the guardianship was entered. Mr. Nay testified that during one visit, Mr. Session mostly talked with him while JDV played with Mr. Session's other children. Mr. Nay explained that Mr. Session only attempted to engage with JDV after seeing Mr. Nay do so first, and that JDV did not respond to Mr. Session's attempt to say goodbye at the end of the visit.

[¶9] The district court concluded the Nays had shown grounds for termination of Mr. Session's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(i) by clear and convincing evidence. The court explained that Mr. Session had left JDV in the care of the Nays by consenting to the guardianship. The court also found that Mr. Session had not provided support to JDV since the guardianship began. Finally, the district court found that Mr. Session had not communicated with JDV for a period of over one year. The court explained that even though the guardianship order obligated the Nays to facilitate visitation, Mr. Session had "the affirmative duty to have contact with his child" and Mr. Session "went months at a time without even trying." In finding that Mr. Session had not communicated with JDV, the district court characterized the few visits that did occur as "incidental" under Wyo. Stat. Ann. § 14-2-309(a)(i).

[¶10] In the second phase of the trial, the parties presented evidence of whether termination of Mr. Session's parental rights was in JDV's best interests. Ms. Nay again testified, explaining that JDV was hurt by Mr. Session's inconsistent presence in his life. She also testified that JDV did not ask the Nays about Mr. Session and that she did not believe JDV expected Mr. Session to be present in his life. She believed JDV was thriving with the Nays, had bonded with them, and that it was in JDV's best interests to remain with them. Finally, she explained her changed view on whether it was in JDV's best interests for Mr. Session to maintain his parental rights:

> I think at the time of the guardianship everybody was
> still trying to foster that relationship, and so we did our best to

---

[3] In one instance, Mr. Session did not show up for a visit scheduled for June 25, 2022 and texted Ms. Nay on June 30 asking if they would still be having a visit that day. In another, Mr. Session declined an invitation for a visit because his other children were having tonsillectomies, but texted Ms. Nay the day of the originally proposed visit and asked whether they would still be having a visit.

3

try to do that. And over time, with [Mr. Session's] lack of effort put forth into the relationship with [JDV]—and kind of like [the GAL] has said, [JDV] has—[JDV] has done really well, and I think he's finally been able to move from the trauma. And I don't think that—because we see that [JDV] is—[JDV] has that lack of a relationship with [Mr. Session], and he can tell that he doesn't want to foster that relationship.

Mr. Session argued that the Nays and the GAL should be judicially estopped from claiming termination was in JDV's best interests because they had previously agreed during the guardianship action that JDV's relationship with Mr. Session should be maintained.

[¶11] The district court found that JDV was thriving with the Nays and had made significant progress since coming into their home. The court found that Mr. Session had made no effort to have a relationship with JDV and all efforts at visitation were made by the Nays. The court also found there was no longer a relationship between JDV and Mr. Session, and as a result it was in JDV's best interests for Mr. Session's parental rights to be terminated. The district court entered its written order terminating Mr. Session's parental rights shortly after the trial, and Mr. Session timely appealed.

## DISCUSSION

### I. The district court correctly ruled that judicial estoppel did not prevent the Nays and the GAL from arguing that termination of Mr. Session's parental rights was in JDV's best interests.

[¶12] The district court concluded that termination of Mr. Session's parental rights was in JDV's best interests, and in doing so relied heavily on Ms. Nay's testimony. The court permitted Mr. Session to raise, but did not apply the doctrine of judicial estoppel to preclude the Nays and the GAL from arguing that termination was in JDV's best interests. Mr. Session contends this was error.

[¶13] We recently described the doctrine of judicial estoppel:

> Judicial estoppel binds a party by his judicial declarations in prior proceedings, and that party may not contradict them in a subsequent proceeding involving the same issues and parties. Under this doctrine, a party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent action.

4

*Rafter J Ranch Homeowner's Assoc. v. Stage Stop, Inc.*, 2024 WY 114, ¶ 45, 558 P.3d 562, 575 (Wyo. 2024) (internal quotation marks and ellipses omitted) (quoting *Baker v. Speaks*, 2013 WY 24, ¶ 60, 295 P.3d 847, 861 (Wyo. 2013)).

[¶14]   Whether judicial estoppel applies "is a question of law that we review de novo." *In re Robert & Irene Redland Family Tr.*, 2019 WY 17, ¶ 15, 435 P.3d 349, 356 (Wyo. 2019) (citing *Ultra Res., Inc. v. Hartman*, 2015 WY 40, ¶ 58, 346 P.3d 880, 900 (Wyo. 2015)). We have emphasized that the doctrine "is narrow and applies only to changing positions as to facts." *Rafter J Ranch*, 2024 WY 114, ¶ 45, 558 P.3d at 576.  The doctrine is "not to be applied in a highly technical manner which would . . . prevent litigants from presenting their claims against others for determination on the merits." *Baker*, 2013 WY 24, ¶ 60, 295 P.3d at 862 (quoting *Robertson v. TWP, Inc.*, 656 P.2d 547, 553 (Wyo. 1983)).  Other courts have recognized that, when considering whether a party's statements are actually inconsistent under the doctrine, "[i]f the statements can be reconciled there is no occasion to apply an estoppel." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 911 (10th Cir. 2016) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir. 1997)).

[¶15]   In child custody modification proceedings, we have recognized that a child's best interests may not be static—a material change in circumstances that affects a child's best interests may result in "new issues framed by facts differing from those existing" when the original best interests determination was made. *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 46, 501 P.3d 1274, 1288 (Wyo. 2022) (quoting *Arnott v. Arnott*, 2012 WY 167, ¶ 13, 293 P.3d 440, 445 (Wyo. 2012)).  In other words, because a child's best interests may change with a change in circumstances, differing positions as to what is in a child's best interests may be entirely reconcilable at different points in time.[4]  That is precisely the situation here.

[¶16]   At the time the guardianship order was entered, JDV had been in the Nays' custody for approximately two years.  At that point, Mr. Session brought snacks and holiday gifts to visits, and appeared to be trying to reunify with JDV.  Notably, however, visitations between Mr. Session and JDV became substantially less frequent after his visit with JDV the first Christmas after the guardianship began.  As Ms. Nay testified, arranging visitation with Mr. Session proved difficult.  There were last minute cancellations, numerous excuses, and prolonged periods where Mr. Session was unresponsive or had changed his contact information without informing the Nays.  Mr. Session himself testified that he did not feel he knew JDV well because of the time they had spent apart.

---

[4] We do not suggest that child custody proceedings are entirely analogous to termination of parental rights actions.  There are important distinctions, including a termination proceeding's direct interference with a parent's fundamental right of familial association. *See Matter of MMD*, 2024 WY 35, ¶ 9, 545 P.3d 846, 849 (Wyo. 2024).  However, the dynamic and evolving nature of a child's best interests is relevant in both types of proceedings.

[¶17]  The district court noted these changes and, like us, found no inconsistency in how the Nays' and the GAL's viewpoints concerning JDV's best interests had changed over time.  *See Supreme Court of New Mexico*, 839 F.3d at 911.  Because the Nays' and the GAL's position on the ultimate question of JDV's best interest had justifiably changed with the changing dynamic between JDV and Mr. Session, the Nays were entitled to a determination of the merits of their petition.  *See Baker*, 2013 WY 24, ¶ 60, 295 P.3d at 862.  The district court did not err in ruling the Nays were not judicially estopped from claiming that it was in JDV's best interests to terminate Mr. Session's parental rights.[5]

## II.    *The district court did not violate Mr. Session's substantive due process rights when it terminated his parental rights.*

[¶18]  In his second issue, Mr. Session argues that the district court violated his substantive due process rights when it terminated his parental rights.  He does not allege any procedural due process errors.

[¶19]  We agree with Mr. Session that his parental rights are fundamental, and that

> due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Ailport v. Ailport*, 2022 WY 43, ¶ 7, 507 P.3d 427, 433 (Wyo. 2022) (quoting *Vaughn v. State*, 2017 WY 29, ¶ 26, 391 P.3d 1086, 1095 (Wyo. 2017)).  This "substantive component" of due process encompasses certain fundamental rights that may be impeded by the government only in rare circumstances. *Ailport*, 2022 WY 43, ¶ 7, 507 P.3d at 433.
>
> One of those fundamental rights is the right of parents "to raise their children as they see fit and make decisions regarding their associations without interference from the government." *Id.*, ¶ 8, 507 P.3d at 433 (citing *Michael v. Hertzler*, 900 P.2d 1144, 1148 (Wyo. 1995)).  The United States Supreme Court has said this right "is perhaps the oldest of the fundamental liberty interests" recognized under the United States Constitution. *Troxel v. Granville*, 530 U.S. 57,

---

[5] The Nays and the GAL also argue that the doctrine of judicial estoppel cannot apply to the GAL's statements.  For this proposition, they cite *Matter of Paternity of SDM*, where we held that judicial estoppel only applies to parties to a case.  882 P.2d 1217, 1224 (Wyo. 1994).  The Nays and the GAL reason that because a GAL is not a "party" to a termination case, judicial estoppel cannot apply to a GAL's recommendations regarding a child's best interests.  Because we hold that judicial estoppel is inapplicable in this case regardless, we need not address this argument.

6

65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality opinion).

*Burbridge v. Dalin*, 2024 WY 119, ¶¶ 11-12, 558 P.3d 954, 957 (Wyo. 2024).

[¶20]   Mr. Session's due process argument is twofold.  He first claims that the Nays would have been unable to prove the grounds for termination in Wyo. Stat. Ann. § 14-2-309(a)(i) by clear and convincing evidence had they not violated the order appointing them as guardians.  Second, he argues that the district court failed to strictly construe subsection (a)(i) in his favor when it found that his limited contacts with JDV were "incidental."  We address these arguments in turn, applying a de novo standard of review.  *Taulo-Millar*, 2022 WY 8, ¶ 16, 501 P.3d at 1280; *see also In re AGS*, 2014 WY 143, ¶ 19, 337 P.3d 470, 477 (Wyo. 2014) ("Due to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny.  As part of this strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence.") (quoting In re ZKP, 979 P.2d 953, 956 (Wyo. 1999)).

### A.      The record does not support Mr. Session's contention that the Nays failed to comply with the guardianship order.

[¶21]   Wyo. Stat. Ann. § 14-2-309(a)(i) provides that parental rights may be terminated if it is shown by clear and convincing evidence:

> The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year.  In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications.  For purposes of this paragraph, a court order of custody shall not preclude a finding that a child has been left in the care of another person[.]

The three elements a petitioner must prove under subsection (a)(i) are: "(1) the children have been left in the care of another; (2) without provision for support; and (3) without communication from the absent parent." *Int. of RAA*, 2016 WY 117, ¶ 14, 384 P.3d 1156, 1159 (Wyo. 2016).  Each of these elements must be proven to have occurred for a period of at least one year. *Id.*, 2016 WY 117, ¶ 14, 384 P.3d at 1159.

[¶22]   Implicit in Mr. Session's argument is the proposition that due process bars a district court from finding these elements are met when a party obligated to facilitate visitation failed to do so, and such failure resulted in a lack of contact between the parent and child.

7

He cites no authority for this proposition beyond the general rule that termination statutes must be strictly scrutinized. Because the record does not support Mr. Session's contention that the Nays failed to meet their obligations as JDV's guardians, we do not further scrutinize his proposition.

[¶23] The guardianship order stated: "The Guardians will facilitate visitation between [JDV] and Michael Session in a safe environment at least once a month." The Nays' visitation log, the accuracy of which Mr. Session did not dispute,[6] reflected that the Nays directly communicated with Mr. Session about visitation during all but six months between January 2022 and the filing of their petition to terminate Mr. Session's parental rights in July 2023. Based on the record, we attribute the lack of communication during those six months to Mr. Session. In July 2022, Mr. Session told the Nays that he could not schedule a visit that month because his other children were each having a tonsillectomy. Ms. Nay asked Mr. Session to let them know when Mr. Session would be available for another visit, but he did not communicate with them again until September. After a September visit, the Nays requested Mr. Session's availability, but he did not communicate with them until November. During two other gaps in communication, the Nays had again requested Mr. Session's availability; when they finally heard from him, it was from a new phone number that he had not given them.

[¶24] We agree with the district court's statement:

> The [c]ourt does find that Mr. Session has been provided due process in this matter. He was served his termination petition. He was appointed counsel at his request. He was represented in the guardianship case as well. He consented to that guardianship case. And even though the visitation—monthly visitation was to be facilitated by the Nay family, that did not shift the burden or create an additional duty for them that would relieve Mr. Session of his rights or his obligations as a parent to support and communicate with his child.

The record demonstrates the Nays repeatedly reached out to Mr. Session to try to facilitate visits with JDV. In doing so, they satisfied their obligations under the guardianship agreement. Mr. Session's reliance on the fact that they did not specifically contact him during some of the months in question is misplaced, given that he was entirely

---

[6] Mr. Session did remember certain details differently than reflected in the log. For instance, he insisted that his last visit with JDV occurred "at least two or three" years prior to trial, despite the Nays' log reflecting the date of that visit as being in April 2023. The district court attributed this to Mr. Session's confusion. On appeal, Mr. Session assumes the accuracy of the log in arguing that the Nays failed to meet their obligations under the guardianship order.

8

unresponsive to their requests for his availability and failed to let them know of changes to his contact information.

**B. The district court did not err in finding that Mr. Session's limited contacts with JDV were incidental.**

[¶25] Under Wyo. Stat. Ann. § 14-2-309(a)(i), the district court may disregard "incidental contacts and communications" in determining whether an absent parent communicated with a child during a particular year. Mr. Session contends that strict scrutiny cannot support the district court's finding that his limited contacts with JDV following the appointment of the Nays as guardians were "incidental."

[¶26] We have previously construed what "incidental" means under this statute:

> We find the language is sufficiently clear and unambiguous and the ordinary and obvious meaning of "incidental" as used in the statute is a casual minor occurrence that is insignificant and of little consequence. *See Matter of Adoption of McMullen*, 236 Kan. 348, 691 P.2d 17, 20 (1984) ("[T]the term 'incidental' as used in the statute means 'casual; of minor importance; insignificant; of little consequence.'"); *see also In re Adoption of Baby Girl P.*, 291 Kan. 424, 242 P.3d 1168, 1175 (2010) (finding father's conduct more than incidental). We must make clear that "incidental" is not limited to something occurring merely by chance or without any intention. In other words, even intentional communications can be considered incidental, just as those that happen by chance can. To exclude intentional contacts from the scope of the term "incidental" would be contrary to the legislative intent of Wyo. Stat. Ann. § 14–2–309(a)(i) and our precedent.

*RAA*, 2016 WY 117, ¶ 17, 384 P.3d at 1160.

[¶27] In support of its finding that Mr. Session's contacts with JDV were incidental, the district court noted that Mr. Session attended only three of nineteen scheduled visits during the period in question. He did not attempt to schedule any phone visitation and frequently cancelled visits at the last minute with little to no explanation. It also found that when visits that did occur, Mr. Session and JDV interacted very little; JDV mostly played with Mr. Session's other children. This finding that there was not a bond between Mr. Session and JDV was corroborated by testimony from various witnesses, including Mr. Session himself.

9

[¶28] Mr. Session does not rebut these findings. He simply argues, without elaboration, that had the district court strictly construed subsection (a)(i) in his favor, it would not have reached the conclusion that it did. Our precedent indicates otherwise. In *RAA*, we held that the district court erred in finding the father's contacts to be incidental when "he consistently sent letters and cards to his children" while incarcerated and attempted to visit them immediately upon his release. 2016 WY 117, ¶ 21, 384 P.3d at 1161. We characterized these contacts as "just enough to avoid satisfying the statute's requirements." *Id.* Mr. Session's efforts in this case were much less significant, and his contacts with JDV were of little consequence. Thus the district court did not err in finding them to be incidental.

## *CONCLUSION*

[¶29] The district court properly ruled that judicial estoppel did not bar the Nays from arguing that JDV's best interests had changed since they became his guardians. It also did not violate Mr. Session's substantive due process rights when it terminated his parental rights. Therefore, we affirm.