[No. 12447.   In Bank. — May 14, 1888.]

D. F. OGLESBY ET AL., RESPONDENTS, *v.* HANNAH A. HOLLISTER ET AL., APPELLANTS.

VOID TAX DEED — RECORDING — NOTICE. — A tax deed which is void on its face does not affect the title, and its registration gives no notice to any person.

TENANTS IN COMMON — DUTY TO PAY TAXES. — A tenant in common of land is under no duty to pay the taxes assessed upon the undivided interest of his co-tenant.

ID. — ADVERSE POSSESSION — PURCHASE OF TAX TITLE. — The attempted purchase at a tax sale by a tenant in common of his co-tenant's title, and the taking of a tax deed void on its face, purporting to convey the same, indicate a purpose by the purchaser to claim the whole title adversely to his co-tenant.

ID. — OUSTER OF CO-TENANT — EVIDENCE OF. — An ouster or disseisin by a tenant in common is not to be presumed from the mere fact of sole possession, but it may be proved by such possession accompanied by a notorious claim of exclusive right.

ID. — FINDING — EVIDENCE. — A finding that a tenant in common of the land in question had acquired title to the same by adverse possession as against his co-tenant, *held,* supported by the evidence.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*E. B. Hall, J. W. Taggart,* and *R. B. Canfield,* for Appellants.

Exclusive claim to land by a tenant in common, accompanied by exclusive possession and enjoyment, does not constitute an ouster so as to set the statute of limitations in motion, unless the claim is made known to the co-tenant, or ought to be known to him as a prudent man, reasonably attentive to his own interests. (*Ord* v. *De la Guerra,* 18 Cal. 75; *Miller* v. *Myers,* 46 Cal. 539; *Packard* v. *Johnson,* 57 Cal. 180; *Trenouth* v. *Gilbert,* 63 Cal. 407; *Mauldin* v. *Cox,* 67 Cal. 387; *Wilson* v. *Atkinson,* 68 Cal. 590; Freeman on Cotenancy, secs. 221, 229.)

*W. C. Stratton,* for Respondents.

McKINSTRY, J.— An action to quiet the title to block of land No. 56½ in the city of Santa Barbara. It was commenced February 16, 1887.

On the eighth day of April, 1873, A. A. Oglesby and W. F. Russell became the owners at law, as tenants in common, of blocks Nos. 56½ and 70½, by virtue of a deed of conveyance thereof executed by Frissius and Hernster. Russell paid no part of the purchase-money, and on the same day he and A. A. Oglesby entered into the agreement and executed the instrument following: "Whereas, A. A. Oglesby and W. F. Russell have purchased blocks Nos. 56½ and 70½ in the town of Santa Barbara for their joint and equal benefit, and said A. A. Oglesby furnished all the purchase-money, now it is hereby understood and agreed that they, each of them, withhold the property from sale for the period of one year from date, unless sooner sold by mutual agreement, and out of any sale the said Oglesby shall first receive one thousand six hundred dollars in United States gold coin, with interest thereon at the rate of one per cent per month, and then the balance of property be equally divided between them; but, notwithstanding, the said

W. F. Russell may at any time within the year afterwards pay his share of the purchase-money, with the interest thereon, without agreeing to a sale."

No part of W. F. Russell's share of the purchase-money has ever been paid, nor has any portion of the property been sold or conveyed except as herein stated.

Prior to the conveyance from W. F. to D. H. Russell, hereinafter mentioned, W. F. Russell mortgaged the undivided one half of the lands described to W. W. Hollister. On the 20th of September, 1875, W. F. Russell conveyed his right, title, and interest in the lands to D. H. Russell. W. F. Russell died March 26, 1877, and D. H. Russell, named as grantee in the deed aforesaid, was appointed administrator of his estate. On the thirteenth day of July, 1877, W. W. Hollister commenced an action to foreclose his mortgage, wherein D. H. Russell as owner of the equity of redemption, and D. H. Russell as administrator, were made parties defendant.

While said action was pending, and on the thirteenth day of May, 1878, the tax collector of Santa Barbara County made and delivered to A. A. Oglesby a tax deed, purporting to convey an undivided one half of said block of land No. 56½, which deed was acknowledged and recorded on the same day.

In the suit brought by W. W. Hollister a decree foreclosing his mortgage and the rights of defendant in the mortgaged premises was entered, and thereunder the premises mortgaged were duly sold. Said Hollister became the purchaser at such sale, and no redemption being had, received a sheriff's deed, conveying all the interest of the estate and heirs of W. F. Russell and the interest of D. H. Russell in the mortgaged premises; which deed was made, executed, and recorded March 28, 1879.

A. A. Oglesby died July 14, 1884; W. W. Hollister died August 8. 1886.

The plaintiff acquired the title of which A. A. Oglesby died seised in the two blocks of land, by deeds from all

his heirs, made and recorded January 24, 1887. The defendants are the heirs of W. W. Hollister, and the executors of his estate.

Plaintiff's claim that the ancestor of their grantors disseised his co-tenant of block 56½, and remained in adverse possession of the same, asserting title to the whole thereof, until the date of his death, and that their grantors and they have been in adverse possession since that date. They aver that D. H. Russell was ousted from the possession on the 13th of May, 1878, the date of the tax deed.

The court below found:—

" 6. That when said tax deed was issued to said A. A. Oglesby, and recorded, he ousted said D. H. Russell and W. W. Hollister, and the whole world, from the said real property, and thereafter was in the exclusive possession of the same, under a claim of title to the whole thereof, exclusive of other right, and ever since said tax deed was issued to said Oglesby, the whole of said block has been assessed to him and his successors, and he and they have claimed title to the whole of said block No. 56½, and held possession adverse to said D. H. Russell and W. W. Hollister, and to the defendants, and the whole world, and ever since the thirteenth day of May, 1878, and for more than five years before the commencement of this action, said A. A. Oglesby and his successors and the plaintiffs have been, and plaintiffs now are, in the actual, open, notorious, peaceable, quiet, and exclusive possession of the whole of said block No. 56½, and during all of that time they have paid all assessments and taxes of every kind which have been levied, assessed, or taxed against said block, or any part thereof, or interest therein.

"7. That said W. W. Hollister, at the time said mortgage was made to him by said W. F. Russell, had notice, by reason of the records in the office of the county recorder of the county of Santa Barbara, of the equities of said W. F. Russell and said A. A. Oglesby."

Appellants contend the findings are not sustained by the evidence. If there is evidence to sustain the finding that A. A. Oglesby and his successors were in adverse possession of lot 56½ for more than five years prior to the commencement of this action, such adverse possession conclusively establishes a previous ouster, the precise date whereof is immaterial.

It is said by respondent that the record of the tax deed gave constructive notice to W. W. Hollister of its contents, and of the fact that A. A. Oglesby was claiming title thereunder to the undivided half of the block No. 56½, which had belonged to D. H. Russell. But the tax deed was void on its face, and did not affect the title. (Civ. Code, sec. 1158.) Its registration gave no notice to any person. (*Sawyer* v. *Adams*, 8 Vt. 172; 30 Am. Dec. 459; *Mesick* v. *Sunderland*, 6 Cal. 315.)

Nevertheless, the attempted assessment under which the sale for taxes was made was an attempted assessment of D. H. Russell's undivided one-half interest in block 56½. No duty was imposed upon A. A. Oglesby to pay the taxes on that half. We may assume that a tax deed, void on its face, constitutes no color of title in such sense that it extends an actual possession of part of the land described in it to the limits of such description. Here A. A. Oglesby had and continued in the actual possession of the whole of block 56½,—whether for himself alone, or for himself and D. H. Russell, is a different question. His attempted purchase of his co-tenant's title, and the taking of a deed purporting to convey the same, were acts indicating his purpose to claim the whole title adversely to his co-tenant. (*Pillow* v. *Roberts*, 13 How. 472, 477.)

One tenant in common can disseise another. But *prima facie* the possession of one is also that of the other. An ouster or disseisin is not to be presumed from the mere fact of sole possession; but it may be proved by such possession, accompanied by a notorious claim of

exclusive right. (*Ricard* v. *Williams*, 7 Wheat. 121.)
The difference between that and other cases is, that acts
which, if done by a stranger, would *per se* be a disseisin,
are, in cases of tenancies in common, susceptible of
explanation consistent with the real title. Acts of own-
ership are not, in tenancies in common, necessarily
acts of disseisin. It depends upon the *intent* with which
they are done and their *notoriety*. (*Prescott* v. *Nevers*, 4
Mason, 326.) Where a possession commences with the
consent of the owner, which is the presumption when
one tenant in common is in sole possession, there can
be no disseisin or adverse possession until there has
been a disclaimer by the assertion of an adverse title,
and notice thereof to the owner, either direct or to be
inferred from notorious acts. (Wood on Limitations,
507.)

Nevertheless, the real question, Was there an ouster
and consequent disseisin of the co-tenant? depends
upon the circumstances of each case. It is a question of
fact, to be submitted to the jury wherever there is any
substantial evidence of an ouster. (Wood on Limita-
tions, 507, 509, 510.) It has very frequently been held
that the exclusive possession by one tenant in com-
mon for a great number of years, without any account-
ing to or recognition of right in his fellow-commoner,
or any evidence explaining why the co-tenant neglected
to assert his right, is evidence from which the jury may
infer actual ouster and adverse possession. (*Lefavour* v.
*Homan*, 3 Allen, 355; Freeman on Cotenancy, sec. 442,
and cases there cited.)

It may be conceded, however, for the purposes of this
decision, that in this state the fact of exclusive posses-
sion or pernancy of the profits by one tenant, however
long continued, and although there has been no asser-
tion of right by the co-tenant, and there is no explanation
of his silence, is not of itself sufficient proof of ouster or
disseisin. (*Miller* v. *Myers*, 46 Cal. 535.) Yet the fact

is not immaterial, and if possession has been accompanied by acts indicating an adverse claim of title of so notorious a character as to satisfy a jury that a person, ordinarily attentive to his interests, in the position of the co-tenant, would have notice of the adverse claim, a finding of adverse possession will be sustained. While the exclusive and uninterrupted possession and reception of the profits for a long period may not be sufficient evidence of adverse holding, it is some evidence, because it accords with ordinary experience that men do not sleep on their rights, and property owners usually manifest some regard for their property rights.

Nor should the circumstance that neither D. H. Russell nor his grantor or successor ever paid or offered to pay the purchase-money for one half of the blocks be entirely ignored in considering the question of adverse possession. There enters into the notion of a title acquired by adverse possession the element of acquiescence or abandonment of his title by the party who fails to assert it for the statutory period. The jury may have believed that D. H. Russell and his successors intended to abandon a legal right to possession, which, upon every equitable consideration, ought not to have been insisted upon; that they did not intend to assert a title to one half of the land after a failure to pay Oglesby for it within the time limited by the agreement between him and W. F. Russell. The intent of A. A. Oglesby and his successors to claim adversely being shown, would not less evidence suffice to establish notice of such adverse intent to persons in the position of defendants and their predecessors than is necessary in ordinary cases of tenancies in common? Even if W. F. Russell obligated himself to pay to Oglesby one half the purchase price, it was never paid; Oglesby did not attempt to enforce its payment by legal process. Under such circumstances, Russell and his successors would naturally have regarded acts of ownership by Oglesby, otherwise susceptible of

explanation as in accord with the relation of tenants in common, as evidence that Oglesby intended to claim the whole title against the tenant in common who had paid nothing.

At the trial below there was evidence that A. A. Oglesby was, as found by the court, " in the open, notorious, peaceable, quiet, and exclusive possession of the whole of block 56½." There was evidence that in the year 1874 or 1875 he fenced each of the blocks separately; that from 1882 the block 56½ was exclusively in the occupation of said Oglesby and his tenants up to his death, he receiving the whole of the rents, accounting to no person for any part thereof, and not being called on to account therefor; evidence that he had repeatedly entertained propositions for the purchase of the whole of the land, and attempted to sell the whole, as owner of the whole; evidence that the blocks were generally known as "Oglesby's blocks," and that since his attempted purchase of the co-tenants' interest at the tax sale, he and his successors have paid all taxes and public charges assessed against block 56½.

Taking the evidence as a whole, we cannot say that the court below was not justified in deciding that the acts and conduct of Oglesby and his successors with respect to the property were of so open and notorious a character as that their co-tenants should be held to have had notice that he and his successors were in possession, claiming the entire title.

But W. F. Russell did not absolutely obligate himself to pay one half of the purchase-money. In a certain event he had the privilege to do so within a definite period, and, from the nature of the transaction, time was of the essence of the contract. Russell risked nothing by the arrangement. If the price of the blocks went up, and he and Oglesby agreed upon sales during the first year, he would get one half of the excess beyond the price paid by Oglesby, or, if he did not agree, he

could at his option secure the equitable title by paying one half of such price. The written contract contains a declaration of an express trust on his part. He received the legal title to one half in trust that he would convey in case of sales by mutual assent, as therein provided for, or that within a year "afterwards" he would, at his option, take the beneficial interest himself on paying to Ogelsby one half of the purchase price advanced by him. (Civ. Code, sec. 857.) As the legal title was already in him, there would be no transfer of it in case he paid the money, but upon such payment he would become vested with the entire ownership, legal and equitable. As the lands were not sold to third persons, and Russell did not purchase himself, the purposes of the trust failed. At the most, there remained in Russell and his successors the bare legal title to an undivided one half of block 56½, Oglesby, who was entitled to the entire beneficial use of the property, being in possession. This right, which would constitute a defense to an action of ejectment by defendants, and the possession under it, the successors of the latter had the right to have quieted in the present action.

Even if it could be held that time was not of the essence of the contract of 1873, the result would be the same, since the money which W. F. Russell had the option to pay was not paid when this action was commenced,—fourteen years after the contract was made. After this great lapse of time, defendants could not secure the equitable rights of plaintiffs by paying the money. And they do not offer to pay it.

Judgment and order affirmed.

SEARLS, C. J., PATERSON, J., THORNTON, J., McFARLAND, J., and SHARPSTEIN, J., concurred.

Rehearing denied.