Bernice PETRUSIC, formerly Bernice Carson, et al., Appellants (Counter-plaintiffs and defendants below),

The Unknown Heirs and Devisees of Byron W. Carson, Deceased, et al., (Defendants below),

v.

Daniel W. CARSON, a/k/a Dan W. Carson, Appellee (Counter-defendant and plaintiff below),

Eric Rule (Counter-defendant below).

In the Matter of the ESTATE of Byron W. CARSON, Deceased.

Esther TAYS, Appellant (Petitioner below),

v.

Daniel W. CARSON, Appellee (Respondent below).

Nos. 4023, 4026.

Supreme Court of Wyoming.

April 24, 1972.

**71**

Thomas E. Lubnau, Gillette, E. E. Lonabaugh, Sheridan, for appellants.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, for appellee.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Daniel W. Carson commenced a quiet-title action for lands situate in Campbell County, and known as the "Buck place,"[1] against certain heirs of his father, Byron W. Carson, deceased. Defendants answered and counterclaimed,[2] asking for a three-eighths interest in the land, and Esther Tays, one of the heirs, then petitioned to reopen the Estate of Byron W. Carson, deceased, for the purpose of setting over the lands in the quiet-title action to the heirs at law of Byron W. Carson for the reason that they had been omitted from the probate of that estate and should be distributed to the heirs. After hearing in the quiet-title action, judgment was entered for plaintiff Carson whereupon he moved for and was granted summary judgment in the estate matter. The resultant appeals in the two cases were consolidated for hearing in this court.

The essential facts underlying the litigation are uncomplicated and undisputed. Byron W. Carson on February 26, 1926,

had received, and subsequently recorded, a sheriff's deed for the Buck place, and at that time owned some 640 acres of other land in Campbell County. Less than four months later he died intestate, and his surviving spouse filed a petition for letters of administration, alleging that the deceased owned 960 acres of land in Campbell County[3] and had left as heirs his 51-year-old wife, three daughters (Bernice, aged 26; Dorothy, aged 25, Katheryn, aged 13) and a son (Dan, aged 20). Mrs. Carson was appointed administratrix, and all property was inventoried and appraised for $4,308.-75.[4] Various orders were entered in the estate matter and while on April 21, 1930, it was decreed that "the whole of the estate of Byron W. Carson, deceased, in Campbell County, Wyoming, be, and the same is hereby set over to Anna M. Carson, the surviving widow of said decedent, as her absolute property" nowhere was there a description of the Buck place although in the various orders involving the property there were descriptions of other lands owned.

On July 25, 1930, Mrs. Carson executed a warranty deed of S½SW¼, W½SE¼, sec. 2; E½SE¼, sec. 3; N½NE¼, sec. 11; T. 54 N., R. 74 W., 6th P.M. (the Buck place), to plaintiff Carson; and five days later this was recorded. Plaintiff Carson has had possession of the land known as the Buck place since 1930, paying all taxes, maintaining all fences around it and subsequently enclosing it within his pastures and fields, cultivating various acreages of it and raising livestock thereon; in 1944 he quieted title to the "sheriff's mortgage" in an action against Barnes Brothers of Minnesota, et al.; executed various

1. S½SW¼, W½SE¼, sec. 2; E½SE¼, sec. 3; N½NE¼, sec. 11; T. 54 N., R. 74 W., 6th P.M.

2. The counterclaim included Eric Rule as a party to whose predecessor plaintiff Carson had in 1938 conveyed a part of the subject land.

3. A description purportedly followed of these 960 acres but examination thereof shows only 640 acres enumerated: SE¼,

sec. 10; S½ and S½N½, sec. 11; T. 54 N., R. 74W., 6th P.M.

4. Testimony was adduced at the hearing from the appraisers that the Buck place was appraised and returned in the value of the estate although the real property was listed in the inventory and appraisement as: "SE¼ Sec. 10; S½, and S½ N½ Sec. 11, Twp. 54 N.R. 74 W. 6th P.M., Campbell County, Wyoming, 840 acres."

oil and gas leases involving the property since 1945; received all rents and profits from the lands since 1930, leasing portions of it—beginning probably in 1930; and in 1938 when a highway cut off segments of his property and a neighbor's land, traded portions of the Buck place for Rule land.

Appellants urge here that two questions are presented by their appeals:

1. "Whether or not the court should have allowed the reopening of the Byron W. Carson Estate for the purpose of administering the lands omitted from the Inventory and Appraisement and acted upon by order of the court."

2. "Whether or not the District Court erred in finding the existence of adverse possession between cotenants, with knowledge or notice of such hostile holdings as affected by family or blood relationship and the fact that the cotenancy was unknown from the time of its inception by the appellees [sic]."

## Cotenancy

From the record, it appears that when the Buck place was purchased only the minor children, Dan and Katheryn Carson, resided with Mr. and Mrs. Byron W. Carson at their ranch home on land they had homesteaded in Campbell County, although the other daughters lived nearby, and that plaintiff Carson had contributed to the purchase price of $1,026.75. Prior to Byron W. Carson's death he and his son had started fencing the Buck place, which adjoined the father's patented lands to the north. Plaintiff Carson did not discover until the fall of 1966 or 1967 that his sisters might have some type of claim against the land.

Katheryn Oedekoven and Esther Tays learned of their claim against the land through Mrs. Tays' father, Herman Oedekoven, who in late 1966 or early 1967 while checking royalties and leases with an oil

man in an effort to find unleased land to pick up, saw where the Buck place was deeded to plaintiff Carson but could not see where it had been set over to his mother. Mr. Oedekoven thought it was quite awhile after that when he informed Mrs. Oedekoven and Mrs. Tays of the situation as at first he did not "think it was of any value."

It is the position of appellants that (1) in view of the fact Byron W. Carson died intestate the title to the Buck place vested immediately in Anna M. Carson (½ interest), Daniel W. Carson (¼ interest), Bernice Petrusic (¼ interest), Katheryn Oedekoven (¼ interest), and Dorothy Oedekoven (¼ interest), now deceased, and mother of appellants, Macel Woods, Viola Hart, Esther Tays, and Wilma Villicano;[5] (2) the presumption would be that Mrs. Carson and her son, Daniel, were tenants in common along with the daughters and that possession was not adverse to but in common with the other cotenants. They argue that to terminate such presumption there would have had to be some hostile act, conduct, or declaration on the part of the possessor amounting to the repudiation of his cotenants' rights and an assertion of exclusive title in himself, of which the cotenants had knowledge or notice, citing 3 Am.Jur.2d Adverse Possession § 173, and on the authority of Torrez v. Brady, 37 N.M. 105, 19 P.2d 183, 186, say that before the possession of a cotenant can become adverse to his cotenants, the latter must have knowledge or "actual knowledge" that the possessor is claiming exclusive ownership and is holding the premises adversely to them, and submit that the trust of the cotenants could be terminated and adverse possession could begin on the part of plaintiff Carson only by his giving actual notice to all of his cotenants, which admittedly he failed to give to any of them until 1967.

Analysis of the authorities indicates there to be little merit in the argu-

5. Obviously in each instance where appellants use "¼" interest one-fourth of one-half, or actually "⅛," is meant.

ment of appellants that *actual* notice was necessary, and no extended discussion of the legal philosophy attendant to adverse possession between cotenants appears warranted in view of the abundance of writings on that subject, e. g., Annotation, 82 A.L.R.2d 5.

As indicated in the many pronouncements on the subject, it was not necessary that the cotenants have *actual* notice of plaintiff Carson's adverse possession. Notice may arise from acts or circumstances attending adverse possession, which are overt, notorious, and unequivocal in their character and import. Black v. Beagle, 59 Wyo. 268, 139 P.2d 439, 445, 148 A.L.R. 243, 59 Wyo. 286, 140 P.2d 594; Johns v. Scobie, 12 Cal.2d 618, 86 P.2d 820, 823, 121 A.L.R. 1404; Oglesby v. Hollister, 76 Cal. 136, 18 P. 146, 149; Wilkerson v. Thomas, 121 Cal.App.2d 479, 263 P.2d 678, 683; Mercer v. Wayman, 9 Ill.2d 441, 137 N.E.2d 815, 818; 3 Am.Jur.2d § 175, p. 265. This aspect has been succinctly referred to in Annotation, 82 A.L.R.2d 5, 235:

"In by far the greater number of cases the matters relied on to show, that the possessor's cotenants had knowledge or notice of the fact of adverse possession have consisted of acts of the possessor performed on or in reference to the land. The cases formulate a variety of propositions by way of defining when knowledge or notice is so proved or imputed. * * *

"Notice of the hostility of the possession resulting from acts or conduct of the possessor may appear in so many ways that judges and text writers have not undertaken an enumeration. What in one case would be sufficient warning might not be enough in another. The relationship of the parties, their reasonable access to the property and opportunity of or necessity for dealing with it, their right to rely upon the conduct and assurances of the one in possession, matters of kinship, business trans-

actions directly or incidentally touching the primary subject matter, the fact of silence when there was a duty to speak, natural inferences arising from indifference—these and other means of conveying or concealing intent may be important in a particular case but not controlling in another; consequently there can be no 'open and shut rule' by which the result can be ascertained. * * * *"

Although Torrez v. Brady, supra, on which appellants rely, is somewhat ambiguous, as is observed in Annotation, 82 A.L. R.2d 5, 228, a careful examination of that case and the authorities cited therein reflect the holding that knowledge *or* notice is sufficient and also reveals the court to have supported the general rule that an adverse occupant need not give a cotenant actual notice that he is holding in hostility to the cotenant.

This court in Black v. Beagle, supra, 139 P.2d at 445, recognized that the exclusive taking of the profits by one tenant in common for a long period of time with the knowledge of the other cotenant and without any claim of right by him may raise a natural presumption of ouster upon which the jury may find the fact to exist if it satisfies their minds and that if one enters under color of title, claiming the whole for himself, and other necessary conditions of adverse ownership concur, his possession will be adverse to his cotenant. Of course, tenants out of possession cannot prevent the operation of the statute of limitations by proving that they did not know of the facts affecting their interest. Schwab v. Wyss, 136 Kan. 54, 12 P. 2d 719, 721; Annotation, 82 A.L.R.2d 5, §§ 53, 55, 58–62.

The question whether a possessor's cotenant had notice of the adverse character of his possession is ordinarily one for the jury or other trier of fact. Nelson v. Sweitzer, 22 Cal.App.2d 382, 71 P.2d 85, 87; Annotation, 82 A.L.R.2d 5, 305. In view of plaintiff-Carson's en-

trance on the lands some thirty-seven years before the institution of the suit and his conduct in 1930 and subsequent thereto, exercising complete occupation and control of the land, we are unable to say such notice was not sufficient to the alleged cotenants, out of possession, that he was holding adversely if they had paid proper attention to their rights, and accordingly, see no occasion for overturning the judgment of the trial court.

Judgment in Case 4023 affirmed.

### Reopening of the Estate

Since, as explained, the trial court's judgment quieting title to the lands known as the Buck place in Daniel W. Carson was justified and correct, there remains no property in the Estate of Byron W. Carson and no basis for reopening that estate; therefore, the summary judgment is affirmed.

Judgment in Case 4026 affirmed.

Mr. Justice GUTHRIE took no part in the consideration or decision of these cases.