# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 63

**APRIL TERM, A.D. 2025**

**June 9, 2025**

LEEKS CANYON RANCH, LLC, a
Wyoming limited liability company,

Appellant
(Respondent),

v.

JACKSON HOLE HEREFORD
RANCH, LLC, a Wyoming limited
liability company,

Appellee
(Petitioner).

S-24-0249

*Appeal from the District Court of Teton County*
*The Honorable Kate G. McKay, Judge*

***Representing Appellant:***

*Anna Reeves Olson and Weston W. Reeves, Long Reimer Winegar, LLP, Casper, Wyoming. Argument by Ms. Olson.*

***Representing Appellee:***

*Paula A. Fleck, P.C., Holland & Hart LLP, Jackson Wyoming, and Leah C Schwartz, Parsons Behle & Latimer, Jackson, Wyoming. Argument by Ms. Fleck.*

***Before BOOMGAARDEN, C.J., and FOX\*, GRAY, FENN, and JAROSH, JJ.***

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]    Jackson Hole Hereford Ranch, LLC (JHHR) brought this action to partition real property it alleged it owned as a tenant in common with Leeks Canyon Ranch, LLC (Leeks). Leeks counterclaimed, seeking a declaration that it was the sole owner of the property based on theories of judicial estoppel, equitable estoppel, and adverse possession. The district court granted partial summary judgment to JHHR and dismissed Leeks's judicial estoppel and equitable estoppel claims. It then held a bench trial on the adverse possession claim and ruled in favor of JHHR. Leeks appeals the district court's summary judgment order and its findings after the adverse possession trial. We affirm.

## *ISSUES*

[¶2]    This appeal raises three issues:

1. Did the district court err in granting summary judgment to JHHR on Leeks's judicial estoppel claim?

2. Did the district court err in granting summary judgment to JHHR on Leeks's equitable estoppel claim?

3. Was the district court's finding that Leeks failed to establish hostile possession against its cotenant clearly erroneous?

## *FACTS*

### I.    *Background*

[¶3]    Robert Bruce Porter was the grandfather of Robert Gill and Elizabeth Lockhart. During his lifetime, he acquired the Jackson Hole Hereford Ranch, a cattle ranch of more than 2,000 acres in Teton County, Wyoming. This property was later placed in a trust. In the 1990s, Mr. Gill and Ms. Lockhart, along with their aunt, became co-trustees and beneficiaries of the trust.

[¶4]    The parcel presently at issue was created in 1997, when the family made plans to transfer some of the ranch land to the Teton County School District, which would serve as the location of a new high school. Immediately prior to the sale, the trust conveyed to each of Mr. Gill and Ms. Lockhart a 25% interest in a 40-acre parcel of land known as Hereford Ranch Tract 3, with the trust retaining a 50% interest. Mr. Gill and Ms. Lockhart, along with their aunt, signed the deed conveying these interests as co-trustees of the trust. Mr. Gill, Ms. Lockhart, and the trust then conveyed "31.38 acres,

1

'more or less,'" of Hereford Ranch Tract 3 to the School District. This left an L-shaped parcel of approximately 17.3 acres held by Mr. Gill, Ms. Lockhart, and the trust.[1] This parcel was referred to by the parties throughout this litigation as "the Remnant," and is depicted below:



[¶5]  In 2006, the siblings' aunt passed away, and disagreements arose between them. In 2007, they agreed to binding arbitration to settle "all disputes regarding the termination of

---

[1] These acreages are reflected in the various deeds relating to Hereford Ranch Tract 3. We note that the 31.38-acre high school parcel and the 17.3-acre Remnant would together form a parcel greater than 40 acres, though there is no explanation in the record for this apparent inconsistency.

2

the Porter Trust and the distribution of trust assets[.]" The arbitrator was tasked with dividing a great deal of property, though only the division of the property known as the Upper Ranch is relevant to this appeal. With regard to the Upper Ranch, Mr. Gill requested that the arbitrator draw a dividing line that would leave each sibling with a contiguous piece of property. He drew a proposed line and requested that the arbitrator award him everything west of the line, with Ms. Lockhart receiving everything east of the line. When asked by the arbitrator whether Mr. Gill's proposal for Ms. Lockhart's portion of the Upper Ranch included "the 17.27 acres around the high school," Mr. Gill's counsel responded "[i]t includes all of it."

[¶6]    The arbitrator did not accept Mr. Gill's exact proposal, but did order a division of the Upper Ranch that placed the entire Remnant on Ms. Lockhart's side of the division line. In accordance with the arbitrator's order, the trust executed a series of deeds to divide the Upper Ranch, including a quitclaim deed conveying the trust's interest in the Remnant to Ms. Lockhart. At that time, Mr. Gill took no action regarding the 25% interest he held personally. Immediately after the trust conveyed its interest to Ms. Lockhart, she conveyed her interest in the Remnant to Leeks, an LLC she operated with her husband, via warranty deed. She recorded the deed a few weeks later. Around this time, the parties executed a fence agreement and constructed fences roughly dividing the property awarded to Mr. Gill from the property awarded to Ms. Lockhart. The agreement explicitly stated that "the Partition Fences are 'fences of convenience' under the laws of the State of Wyoming, and do not establish a definitive boundary line between the properties on either side of such fences." In 2018, the arbitration award was confirmed by the Teton County District Court.

## II.    The present dispute

[¶7]    In 2019, Leeks entered into a letter of intent to sell a portion of the Remnant to Central Wyoming College. Mr. Gill testified that he learned of the sale in a local newspaper. In late 2020, Mr. Gill's attorney contacted Leeks's attorney, asserting a 25% interest in the Remnant and demanding that Ms. Lockhart and Leeks suspend any further proceedings until "a clear understanding is reached between them on this subject." Leeks's attorney responded that the parties had gone forward from the arbitration with the understanding that Ms. Lockhart received the entirety of the Remnant, and that Leeks had exclusively possessed the Remnant for more than ten years thereafter.

[¶8]    Several months later, Mr. Gill conveyed his interest in the Remnant to JHHR via quitclaim deed. JHHR then brought this action for partition. JHHR alleged that it owned a 25% interest in the Remnant, while Leeks owned a 75% interest, with the two entities serving as tenants in common. Leeks counterclaimed, seeking a declaration that it was the sole owner of the Remnant. It asserted that JHHR was barred from asserting any interest in the Remnant under the doctrines of judicial estoppel, equitable estoppel, and adverse possession.

3

### III. Summary judgment

[¶9]    JHHR moved for summary judgment on Leeks's counterclaims. JHHR argued that the series of deeds resulting in JHHR's 25% ownership interest in the Remnant could not be disputed as to their execution, delivery, and recording. JHHR maintained that Leeks's counterclaims could not divest JHHR of this interest. Specifically, it argued: the arbitrator only had jurisdiction to dispose of trust property and could not have awarded Mr. Gill's individual interest in the Remnant to Ms. Lockhart; Mr. Gill never suggested at arbitration that he would convey any of his individual property to Ms. Lockhart; Ms. Lockhart knew of Mr. Gill's 25% interest because she signed the deed conveying that interest as co-trustee of the trust; pursuant to the statute of frauds, Mr. Gill could not have orally conveyed his real property interest in the Remnant; the present action did not involve the same parties as the arbitration; Mr. Gill's statements at the arbitration were the result of his forgetting about his interest in the Remnant, as opposed to intentional misrepresentation; and finally, Leeks's exclusive possession of the Remnant was not hostile to Mr. Gill's interest as a tenant in common with Leeks.

[¶10]  Leeks responded that JHHR did not own any interest in the Remnant. It reasoned that despite the parties' failure after arbitration to realize that the trust could only convey a 50% interest in the Remnant to Ms. Lockhart, equity demanded that the parties' intent at arbitration be recognized so that Leeks was the sole owner of the Remnant. Specifically, Leeks asserted that Mr. Gill had argued that a fair division of the trust required that Ms. Lockhart receive the entirety of the Remnant. According to Leeks, because the arbitrator did in fact create a division line that placed the Remnant on Ms. Lockhart's side, and because the deed giving effect to that order did not make an exception for Mr. Gill's individual interest in the Remnant, equity required that Ms. Lockhart be recognized as having received the entire Remnant. As to the adverse possession issue, Leeks contended that it had occupied the Remnant under a claim of right based on its understanding of the arbitration award and the fence agreement, and that any entry onto the property by Mr. Gill was pursuant to his water rights and not his rights as a cotenant of Leeks.

[¶11]  The district court explained in its oral ruling after a summary judgment hearing that Mr. Gill did not express a present intent at the arbitration or in the quitclaim deed from the trust to Ms. Lockhart to convey his separate interest in the Remnant. It further explained:

> So I don't find that principles of equitable estoppel or judicial estoppel should override the clear and unambiguous quitclaim deed by the Trust conveying this property, which includes the remainder property, to Ms. Lockhart. The arbitration was only about the Trust property according to the arbitration

4

agreement. There was nothing that has been expressed that any other property owned separately by the parties, that is Mr. Gill or Ms. Lockhart, were included in this, and so even if Mr. Gill had indicated or stated that he wanted Ms. Lockhart to have this undivided 25 percent interest as going along with everything east of the dividing line, there is nothing documenting that he actually did something to carry out that intent. There has to be an intent, there has to be a conveyance in order to have Ms. Lockhart obtain his interest in that property and neither are present, and Wyoming statute about conveyances control.

The district court thus granted summary judgment on Leeks's judicial estoppel and equitable estoppel claims. As for Leeks's adverse possession claims, the district court explained "that adverse possession is almost exclusively a factual determination and probably not appropriate for summary judgment." It found that JHHR had not met its burden of showing that there were no genuine issues of material fact and ordered that the adverse possession issue be tried.

## IV.   *Bench trial on adverse possession*

[¶12]  The district court held a bench trial. Mr. Gill testified that at the time of the arbitration, he had forgotten about the transactions surrounding the sale to the high school, including those that gave him and Ms. Lockhart each a 25% interest in the Remnant. He explained that he was reminded of his interest sometime after the arbitration, but that he did not inform Ms. Lockhart or take any other action regarding his interest in order to avoid further conflict. Mr. Gill acknowledged that shortly after the arbitration had been completed and the fences in the Upper Ranch were constructed, Ms. Lockhart and/or Leeks took possession of the Remnant and used it for its cattle and hay operations. He explained that he occasionally had gone onto the Remnant since then, but that his entrance had always related to accessing and maintaining water sources he used for irrigation on his own ranch. He testified that he had never seen the warranty deed by Ms. Lockhart conveying her interest in the property to Leeks until the present case began. He also testified that he knew the Lockharts were using the Remnant, but that he did not object to them using it as he did not need it for his own ranching operations. He explained that he only felt the need to intervene and protect his interest in the Remnant after hearing about Leeks's planned sale of a portion of the Remnant.

[¶13]  Ms. Lockhart's husband, Kelly Lockhart,[2] also testified. Mr. Lockhart explained that based on the arbitration proceedings, he and Ms. Lockhart believed that

---

[2] Mr. Lockhart is also the manager of Leeks.

Ms. Lockhart had received the entirety of the Remnant, and they proceeded as though they were the sole owners. He further explained that after the fences were built between the siblings' properties, Mr. Gill removed the cattle he received in arbitration and kept them on the west side of the fence. He testified that Leeks or other entities controlled by the Lockharts paid all taxes and insurance premiums on the Remnant, that Leeks maintained the cottonwood trees on the Remnant without help from Mr. Gill, that Leeks grew hay and ran cattle on the Remnant, and that Leeks collected all income derived from cattle operations on the Remnant. Mr. Lockhart explained that he had not seen Mr. Gill or any of Mr. Gill's employees on the Remnant, nor seen any indication from Mr. Gill that he claimed any ownership interest in the Remnant. He also explained that Mr. Gill had never helped with any expenses related to the Remnant and had never demanded an accounting of the profits Leeks received from the Remnant. On cross examination, he admitted that neither he nor Ms. Lockhart had spoken to Mr. Gill about the Remnant or told Mr. Gill that he could not be on the Remnant, explaining that because the Lockharts believed that Leeks owned the Remnant in its entirety, they had no reason to speak to Mr. Gill about the Remnant.

[¶14] The district court ruled against Leeks on its claim of adverse possession. It analyzed each of the elements of adverse possession and found that Leeks's possession of the Remnant was actual, open and notorious, exclusive, and continuous for a period of "just over" ten years. However, the district court found that Leeks failed to show that its possession of the Remnant was hostile to Mr. Gill and JHHR. It explained that Leeks "presented no testimony or evidence of providing clear notice to Gill/JHHR that their ownership was in jeopardy." The district court explained that the fence agreement, by its own terms, reflected that the parties did not believe the post-arbitration fence to constitute an exact boundary line. It also explained that under Wyoming law, one cotenant trying to prove adverse possession against another cotenant faces a higher burden to show that its possession of the co-owned property was hostile. The district court found that Leeks had not clearly demonstrated to Mr. Gill or JHHR that it denied their interests, and that neither Mr. Gill's positions during the arbitration proceeding nor the arbitrator's award could serve to oust Mr. Gill or JHHR from the Remnant; rather, Leeks had to show how its own actions put Mr. Gill on notice that his interest in the Remnant was in danger, and failed to do so.

[¶15] Leeks timely appealed.[3]

---

[3] Leeks initially filed a notice of appeal shortly after the district court's trial decision. This Court dismissed the appeal, as the trial decision left issues relating to JHHR's partition petition unresolved, and thus was not a final appealable order. Following the resolution of all issues pertaining to the partition of JHHR and Leeks's respective interests, Leeks filed a timely notice of appeal.

*DISCUSSION*

**I.  The district court properly granted summary judgment to JHHR on Leeks's judicial estoppel claim.**

[¶16] Leeks contends that the district court erred in granting summary judgment to JHHR on Leeks's judicial estoppel claim because Leeks raised genuine issues of material fact in response to JHHR's summary judgment motion.

**A.  Standard of Review**

[¶17] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a). We review the district court's order granting summary judgment de novo. *Leonhardt v. Big Horn Cnty. Sherrif's Off.*, 2024 WY 128, ¶ 16, 559 P.3d 1053, 1058 (Wyo. 2024) (citing *Wiese v. Riverton Mem'l Hosp., LLC*, 2022 WY 150, ¶ 30, 520 P.3d 1133, 1141-42 (Wyo. 2022)).

> [W]e review a summary judgment in the same light as the district court, using the same materials[4] and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Leonhardt*, 2024 WY 128, ¶ 16, 559 P.3d at 1058 (quoting *Gowdy v. Cook*, 2020 WY 3, ¶ 21, 455 P.3d 1201, 1207 (Wyo. 2020)). "Whether judicial estoppel applies 'is a question of law that we review de novo.'" *Matter of JDV*, 2025 WY 46, ¶ 14 567 P.3d 666, 670 (Wyo. 2025) (quoting *In re Robert & Irene Redland Family Tr.*, 2019 WY 17, ¶ 15, 435 P.3d 349, 356 (Wyo. 2019)).

**B.  Judicial estoppel does not apply because it is undisputed that Mr. Gill had forgotten about his interest in the Remnant at the time of arbitration.**

[¶18] We recently described the doctrine of judicial estoppel:

---

[4] In their arguments on both summary judgment issues, both parties cite to evidence presented for the first time at trial or in post-trial motions. Our standard of review precludes us from considering any such evidence in reviewing the district court's summary judgment order.

> Judicial estoppel binds a party by his judicial declarations in prior proceedings, and that party may not contradict them in a subsequent proceeding involving the same issues and parties. Under this doctrine, a party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent action.

*JDV*, 2025 WY 46, ¶ 13, 567 P.3d at 670 (quoting *Rafter J Ranch Homeowner's Assoc. v. Stage Stop, Inc.*, 2024 WY 114, ¶ 45, 558 P.3d 562, 575 (Wyo. 2024)). Judicial estoppel is a narrow doctrine and only applies to a party's factual positions. *JDV*, 2025 WY 46, ¶ 14, 567 P.3d at 670. The doctrine is not to be applied in a highly technical manner, and where the statements in question can be reconciled, the doctrine will not apply. *Id.*

[¶19]  Leeks asserts that there are issues of material fact as to whether Mr. Gill asserted inconsistent positions at the arbitration and in the present proceeding, whether the arbitrator was misled into believing that the trust owned the entirety of the Remnant and based his award on that mistaken belief, and whether Mr. Gill would receive an unfair benefit if he were allowed to change his position. What Leeks does not dispute is that at the time of the arbitration, Mr. Gill had forgotten about his individual interest in the Remnant. In fact, in its motion to join indispensable parties, which it incorporated by reference into its argument against summary judgment, Leeks explained that "[i]t is likely that all parties had simply forgotten the conveyance to Mr. Gill of an interest in the Remnant parcel." This undisputed fact is fatal to Leeks's judicial estoppel claim.

[¶20]  Various courts have recognized an exception to the doctrine of judicial estoppel where a party's prior position was the result of mistake or was otherwise taken without full knowledge of the facts. In *New Hampshire v. Maine*, the United States Supreme Court recognized that "it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" 532 U.S. 742, 753, 121 S.Ct. 1808, 1816, 149 L.Ed.2d 968 (2001) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). Other authorities are in accord. *E.g.*, *John S. Clark Co.*, 65 F.3d at 29 ("It is inappropriate, therefore, to apply the doctrine when a party's prior position was based on inadvertence or mistake."); *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980) ("Because the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where [a party's] assertions were based on fraud, inadvertence, or mistake.") (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 165 (5th Cir. 1973)); *see also* 28 Am. Jur. 2d *Estoppel and Waiver*, § 67 (May 2025 Update) ("The elements of judicial estoppel are: (1) ***the party being estopped must have knowledge of the facts at the time the original position is taken***; (2) the party must have succeeded in maintaining the original position; (3) the position presently taken must be actually inconsistent with

the original position; and (4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party.") (emphasis added).

[¶21] We find these authorities to be persuasive and largely in accord with Wyoming law. In the earliest Wyoming case recognizing the doctrine of judicial estoppel, we observed that Tennessee courts held that judicial estoppel would not apply where statements "were made inconsiderately, by mistake or without full knowledge." *Hatten Realty Co. v. Baylies*, 290 P. 561, 566 (Wyo. 1930) (citing *Tate v. Tate*, 148 S.W. 1042 (Tenn. 1912)). Though this Court did not fully accept Tennessee's formulation of judicial estoppel, it gave no indication that it rejected an exception to the doctrine in cases where a party's initial position was the product of mistake. *See Hatten Realty Co.*, 290 P. at 568; *see also Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir. 1956) (analyzing the doctrine of judicial estoppel in Wyoming as formulated in *Hatten Realty Co.*). Further, a mistake exception is in accord with our stated reasons for applying the doctrine: to prevent abuse of the judicial process when parties attempt to "play fast and loose with the courts" or "blow hot and cold in the same breath." *Stevens v. Governing Body of the Town of Saratoga*, 2025 WY 35, ¶ 65, 566 P.3d 166, 180 (Wyo. 2025) (quoting *Wilson v. Lucerne Canal & Power Co.*, 2007 WY 10, ¶ 26, 150 P.3d 653, 663 (Wyo. 2007)).

[¶22] Where a party's initial factual position is taken based on mistake, or without full knowledge of the facts, as it was here, the reasons for applying judicial estoppel are absent, and a party will not be estopped from asserting a more informed position in a later proceeding. Therefore, the district court properly granted summary judgment to JHHR to dispose of Leeks's judicial estoppel claim.

## II.     *The district court properly granted summary judgment to JHHR on Leeks's equitable estoppel claim.*

[¶23] Leeks next argues that the district court erroneously granted JHHR summary judgment on Leeks's equitable estoppel claim. In our review of this issue, we apply the same de novo standard of review described above.

[¶24] "The elements of equitable estoppel are a lack of knowledge, reliance in good faith, and action or inaction that results in an injury." *Four B Props., LLC v. Nature Conservancy*, 2020 WY 24, ¶ 68, 458 P.3d 832, 848 (Wyo. 2020) (quoting *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 34, 75 P.3d 640, 653 (Wyo. 2003)). Further, "equitable estoppel . . . requires proof of misrepresentation." *Birt*, 2003 WY 102, ¶ 34, 75 P.3d at 653 (citing *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 813 (Wyo. 1992)).

[¶25] Leeks again contends there are several issues of material fact that made summary judgment improper:

(1) did Mr. Gill propose that Ms. Lockhart receive all of the Remnant; (2) did [the arbitrator] award the entirety of the Remnant to Ms. Lockhart based on Mr. Gill's proposal; (3) to what extent did Ms. Lockhart rely on Mr. Gill's proposal; (4) was Ms. Lockhart's reliance on Mr. Gill's proposal reasonable; (5) what was the extent of Mr. Gill's concealment and/or misrepresentation; and/or (6) what damages did Ms. Lockhart incur in her reliance.

However, as with judicial estoppel, it is the undisputed fact that Mr. Gill forgot about his 25% interest at the time of arbitration that causes Leeks's equitable estoppel claim to fail.

[¶26] Leeks cites to our decision in *Birt* to argue that Mr. Gill's forgetfulness "is immaterial because[] Ms. Lockhart need not prove actual fraud." In *Birt*, we recognized that

> Equitable estoppel may apply whether the actor "intentionally or through culpable negligence induces another to believe that certain facts exist . . . ." *Thompson* [*v. Bd. of Cnty. Comm'rs of Cnty. of Sublette*], 2001 WY 108, ¶ 11, 34 P.3d [278,] 281 [(Wyo. 2001)]. In addition, it is immaterial whether the conduct falsely misrepresented the situation or fraudulently concealed the truth. *Bauer v. State ex rel. Wyoming Worker's Compensation Div.*, 695 P.2d 1048, 1051 (Wyo. 1985). While both "intentionally" and "through culpable negligence" suggest a state of mind beyond mere negligence, neither suggests the level of specific intent required to prove actual fraud. Instead, equitable estoppel is designed to combat not just actual fraud, but also constructive fraud, which "consist[s] of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects." *In re Borton's Estate*, 393 P.2d 808, 812 (Wyo. 1964).

2003 WY 102, ¶ 38, 75 P.3d at 654-55 (footnote omitted). We elaborated in a footnote that "we have defined 'culpable negligence' as 'willful and serious misconduct.' The distinguishing feature of fraud is that it requires that the party made false representations with intent to induce action by another." *Id.*, 2003 WY 102, ¶ 38 n.8, 75 P.3d at 655 n.8 (citations omitted).

10

[¶27]   Again, it is undisputed by Leeks that Mr. Gill was simply unaware that he owned a 25% interest in the Remnant at the time of arbitration. There was no evidence of "willful and serious misconduct" on his part. Instead, as Leeks recognized, he "had simply forgotten" about his 25% interest in the Remnant. While equitable estoppel does not require proof of "actual fraud," it requires something "beyond mere negligence." *Id.*, 2003 WY 102, ¶ 38, 75 P.3d at 655. Leeks presented no evidence that could support a conclusion that Mr. Gill's statements about the Remnant were anything more than mere negligence as a result of a lapse in memory. Therefore, the district court properly granted summary judgment to JHHR on Leeks's equitable estoppel claim.

### III.   *The district court's finding that Leeks failed to meet its burden to show that its possession of the Remnant was hostile to its cotenant, JHHR, was not clearly erroneous.*

[¶28]   We recently outlined the doctrine of adverse possession in Wyoming:

> An adverse possession claim involves shifting presumptions. *Lyman v. Childs*, 2023 WY 16, ¶ 12, 524 P.3d 744, 751 (Wyo. 2023) (citing *O'Hare v. Hulme*, 2020 WY 31, ¶ 20, 458 P.3d 1225, 1234 (Wyo. 2020)). "A presumption of ownership first rests with the record title holder unless and until the adverse claimant makes out his prima facie case of adverse possession." *Lyman*, 2023 WY 16, ¶ 12, 524 P.3d at 751 (citing *Kudar v. Morgan*, 2022 WY 159, ¶ 14, 521 P.3d 988, 993 (Wyo. 2022)). "To establish a prima facie case, the claimant must demonstrate for a period of ten years, 'actual, open, notorious, exclusive and continuous possession of the disputed parcel which is hostile and under claim of right or color of title.'" *Lyman*, 2023 WY 16, ¶ 12, 524 P.3d at 751 (quoting *Kudar*, 2022 WY 159, ¶ 15, 521 P.3d at 993).

*Boot Ranch, LLC v. Wagonhound Land & Livestock Co., LLC*, 2024 WY 136, ¶ 24, 560 P.3d 887, 893-94 (Wyo. 2024). Only once an adverse claimant establishes a prima facie case does the burden shift to the record owner to explain the possession. *See id.*, ¶ 25, 560 P.3d at 894.

[¶29]   Such a prima facie case is more difficult to prove when one cotenant claims that he has acquired his cotenant's interest via adverse possession. *Est. of Weeks by & Through Rehm v. Weeks-Rohner*, 2018 WY 112, ¶ 18, 427 P.3d 729, 734 (Wyo. 2018) (citing *Ferguson v. Ferguson*, 739 P.2d 754, 757 (Wyo. 1987)). This is because each cotenant has a right to possess the property, and thus mere possession by one cotenant is often insufficient to put the other cotenant on notice that his cotenant claims the land for himself. *See Weeks*, 2018 WY 112, ¶ 18, 427 P.3d at 735. "Before one cotenant can

11

obtain title by adverse possession, he must assert an adverse right and a clear, positive and continuous disclaimer of title in his cotenants." *Id.* (quoting *Osborn v. Warner*, 694 P.2d 730, 733 (Wyo. 1985)).

[¶30] The district court concluded that Leeks "ha[d] not met its burden of proving its claim of adversely possessing JHHR's 25% ownership interest in the Remnant Parcel." Leeks challenges this finding.

## A.    Standard of Review

[¶31] Our standard of review following a bench trial is well-established:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed de novo.

*Boot Ranch, LLC*, 2024 WY 136, ¶ 23, 560 P.3d at 893 (Wyo. 2024) (quoting *Tuckness v. Town of Meeteetse*, 2024 WY 42, ¶ 11, 546 P.3d 1091, 1093-94 (Wyo. 2024)).[5]

---

[5] Leeks contends that the evidence it presented at trial regarding Ms. Lockhart's warranty deed purporting to convey a 100% interest in the Remnant to Leeks establishes that Mr. Gill was ousted from the property as a matter of law, and thus our standard of review is de novo. For this proposition, it relies on *Petrusic v. Carson*, 496 P.2d 70 (Wyo. 1962), and cases from other states. We disagree that *Petrusic* supports such a proposition. In *Petrusic*, the adverse claimant received a warranty deed to the property, but the Court considered numerous factors beyond that to determine hostility and notice. *Id.* at 71-72. Moreover, the Court noted that "[w]hat in one case would be sufficient warning might not be enough in another." *Id.* at 73 (quoting W.W. Allen, Annotation, *Adverse Possession Between Cotenants*, 82 A.L.R.2d § 53 (1962)).

**B.    The district court's finding that Leeks failed to establish hostility was not clearly erroneous.**

[¶32]    Leeks argues that even if the warranty deed it received from Ms. Lockhart does not establish hostility as a matter of law,

> other ways Leeks demonstrated an ouster may be derived from the facts that: (1) Mr. Gill unequivocally offered 100% of the Remnant and repudiated his ownership in the Remnant to Mrs. Lockhart in the arbitration; (2) [the arbitrator] accepted Mr. Gill's recommendation and ordered that Ms. Lockhart receive 100% of the Remnant; (3) a partition fence was constructed, which Mr. Gill's attorneys expressly referred to as a "Division Fence"; (4) Mr. Gill never trespassed on the property except to access the irrigation ditch, which he had a right to; (5) Mr. Gill never grew hay, paid taxes, ran cattle, asked for any profits; (6) Mr. Gill was never consulted as to the management of the property; and/or (7) Mr. Gill never assisted in maintaining the property.

Many of these facts may be relevant in determining whether Leeks's possession of the Remnant was sufficiently hostile toward Mr. Gill and JHHR to establish a prima facie case of adverse possession. However, we defer to the district court's findings unless they are unsupported by the record or we are "left with the definite and firm conviction that a mistake has been committed." *Boot Ranch*, 2024 WY 136, ¶ 23, 560 P.3d at 893. After reviewing the record, we conclude that the district court's findings in this case are supported.

[¶33]    The district court weighed the evidence and determined that Leeks had not met its burden as to hostility. In doing so, it gave minimal weight to Leeks's evidence of the parties' intentions during the 2008 arbitration, finding that it had little connection to the alleged adverse possession period "that began in 2009 or 2010." Likewise, it gave minimal weight to Mr. Gill's own actions as well as those of the arbitrator, as those actions did not show what Leeks itself did to objectively place Mr. Gill on notice that it denied his interest in the Remnant. Despite Leeks's other evidence of activities it

---

And, while the Court's decision did not contain a clear statement of the standard of review, it recognized that "[t]he question whether a possessor's cotenant had notice of the adverse character of his possession is ordinarily one for the jury or other trier of fact." *Petrusic*, 496 P.2d at 73. Nothing in the Court's analysis suggested it was applying a de novo standard of review or that it found ouster as a matter of law. We therefore reject Leeks's contention that it established hostile possession as a matter of law and decline its invitation to deviate from our usual standard of review following trial.

conducted on the Remnant, the district court found that Leeks "failed to prove that the manner of its possession of the Remnant parcel conveyed its intent to deny Gill's/JHHR's title or oust them from the property." Given the extraordinarily high burden placed upon a claimant seeking to prove adverse possession against a cotenant, *Weeks*, 2018 WY 112, ¶ 18, 427 P.3d at 734, as well as our requirement to "assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it," *Boot Ranch*, 2024 WY 136, ¶ 23, 560 P.3d at 893, we cannot say that the district court's finding on this element was clearly erroneous.

## *CONCLUSION*

[¶34] The district court properly granted summary judgment to JHHR on Leeks's judicial estoppel and equitable estoppel claims. Its finding that Leeks had failed to meet its burden of proving that its possession of the Remnant was hostile to Mr. Gill and JHHR was not clearly erroneous. Therefore, we affirm.